[L. A. No. 3364.   Department One.—October 15, 1914.]

THE ROYAL TRUST COMPANY, as Liquidator of the Ontario Bank, Appellant, v. ISABELLA MACBEAN et al., Respondents.

CORPORATIONS—SUIT TO ENFORCE STOCKHOLDERS' LIABILITY—FOREIGN BANK—LIMITATION OF ACTIONS.—An action brought in this state to enforce the liability of stockholders under the Bank Act of Canada, for an amount equal to the par value of their shares, over and above the unpaid balance due on the subscription for the shares, is governed by the limitation statutes of this state.

ID.—LIABILITY CREATED BY LAW—THREE YEARS' LIMITATION.—Such action involves a "liability created by law," within the meaning of section 359 of the Code of Civil Procedure, providing that an action to enforce such liability must be brought within three years from the time the liability was created.

ID.—TIME WHEN STATUTE OF LIMITATIONS BEGINS TO RUN AGAINST LIABILITY OF STOCKHOLDERS.—This rule of section 359 of the Code of Civil Procedure, whereby such action is barred at the expiration of three years from the time when the liability was created, is due to the peculiar language of the section, and is a marked exception to the general rule, which measures the period of limitation from the accrual of the cause of action.

ID.—LIABILITY OF STOCKHOLDERS—TIME WHEN CREATED—INSOLVENCY OF CORPORATION.—Under the Bank Act of Canada the liability of stockholders to pay an amount equal to the par value of their shares is "created" at least as early as the insolvency of the corporation, and hence the three-year period of limitation prescribed by section 359 of the Code of Civil Procedure commences to run from that time.

ID.—DISCOVERY OF FACTS ON WHICH ACTION IS BASED—POSTPONEMENT OF OPERATION OF STATUTE OF LIMITATIONS.—The commencement of the operation of the statute of limitations in such case is not postponed until the discovery by the plaintiff of the facts upon which the cause of action depends. The fair reading of this section makes the discovery the starting point of the period of limitation only in cases of actions to recover a penalty or forfeiture; in actions to enforce a "liability created by law," the period is three years from the creation of the liability.

ID.—NATURE OF STOCKHOLDERS' LIABILITY—NO DISTINCTION BETWEEN DOMESTIC AND FOREIGN CORPORATIONS.—There is no real distinction, so far as the question of limitation is concerned, between the liability of a stockholder in a California corporation for such proportion of the corporate debts as the amount of stock owned by him bears to the whole subscribed capital stock, and the liability of a shareholder in a Canadian bank for "an amount equal to the par value of the shares held by him," in addition to any amount not paid up. Each is a liability declared by statute, and each is a liability differing from and superimposed upon the contractual obligation to pay the par value of shares subscribed for.

ID.—LIABILITY OF STOCKHOLDERS—WHETHER CONTRACTUAL OR CREATED BY LAW.—One who voluntarily subscribes for or purchases shares of stock contracts, in a sense, to become liable in accordance with the statute governing the corporation, but nevertheless the liability is one created by law, within the meaning of the statute of limitations.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

C. White Mortimer, and H. A. Massey, for Appellant.

Wm. Chambers, for Respondents.

SLOSS, J.—The plaintiff appeals from a judgment entered in favor of defendants upon the sustaining of their demurrer to the second amended complaint.

The action was brought to enforce the liability of the defendants, under the laws of the Dominion of Canada, as stockholders of an insolvent bank which had been incorporated under the laws of said dominion. The complaint sets forth very fully the statutory provisions governing the incorporation of banks, the liability of stockholders, and the procedure in cases of insolvency or bankruptcy.

It appears that by the "Bank Act" of Canada, enacted in 1890, it is provided that "in the event of the property and assets of the bank being insufficient to pay its debts and liabilities, each shareholder of the bank shall be liable for the deficiency to an amount equal to the par value of the shares held by him, in addition to any amount not paid up on such shares." In the event that no proceedings are taken under any act for winding up the bank, the directors, if suspension of payment continues for three months after the insolvency of the bank (as defined in the act), are required to make calls on the shareholders to the amount deemed by them necessary to pay the liabilities of the bank. In case of winding up, calls are governed by the terms of the Winding-up Act. These provisions, which were in force when the defendants became owners of shares in the Ontario Bank, were re-enacted in the Bank Act of 1906, in effect at the commencement of this action.

There was a "Winding-up Act" in force when the defendants became stockholders. It, too, was superseded by an act of 1906. The two acts are substantially the same, so far as the provisions affecting this action are concerned. They define insolvency, provide for application to the court by creditors for a winding-up order, authorize the court to appoint a liquidator (or more than one), who shall take the property of the company, and have power, with the approval of the court, to bring or defend actions, to carry on the business, and do other acts so far as necessary to the beneficial winding-

up of the business.   Provision is made for the settlement, by
the court, of a list of contributories.   Every shareholder, it
is declared, shall be liable to contribute the amount unpaid
on his shares, or on his liability to the company, or to its mem-
bers or creditors under the act or charter of incorporation;
"and the amount which he is liable to contribute shall be
deemed an asset of the company, and a debt due to the com-
pany, payable as directed or appointed under this act."   Sec-
tion 46 of the earlier act, and section 53 of the later, provide
that "the liability of any person to contribute to the assets
of a company under this act, in the event of the business of the
same being wound up, shall create a debt accruing due from
such person at the time when his liability commenced, but
payable at the respective times when calls are made, as here-
inafter provided, for enforcing such liability."   The court
is empowered, at any time after making a winding-up order,
and either before or after it has ascertained the sufficiency of
the assets of the company, to "make calls on and order pay-
ment thereof by all or any of the contributories . . . to the
extent of their liability, for payment of all or any sums it
deems necessary to satisfy the debts and liabilities of the com-
pany, and the costs . . . of winding-up . . ."   The court is
also empowered, after making a winding-up order, to make an
order of reference, referring and delegating its powers to an
officer of the court.

In addition to setting forth these provisions of the Canadian
laws, the complaint alleges the corporate capacity of the plain-
tiff and of the Ontario Bank, and alleges that since March,
1898, the defendants have been the owners of thirty-four
shares of the capital stock of said bank.   On October 13, 1906,
the Ontario Bank suspended payment, and, under the law of
Canada, it became insolvent ninety days thereafter.   On Sep-
tember 29, 1908, the high court of justice for the province of
Ontario made its order declaring the Ontario Bank to be in-
solvent, and ordering that its business be wound up.   On the
same day said court appointed the plaintiff, The Royal Trust
Company, liquidator of said bank, and delegated to George
Kappele, official referee, "all such powers as are conferred
upon the court by the Winding-up Act and as may be neces-
sary for the winding up of the said bank."   Thereafter a list
of contributories was duly settled, the defendants appearing
on said list as owners of thirty-four shares, and the amount

of their liability being stated as three thousand four hundred dollars. On November 1, 1910, the official referee made a call upon each of the contributories for ninety-five per cent of the amount for which they were respectively settled upon the list, and such contributories were ordered to make payment to the plaintiff, as liquidator, on or before December 1, 1910. Notice of this order was served on defendants, but they declined to pay. In January, 1911, a second order requiring defendants to pay to the plaintiff the sum of $3230 (being ninety-five per cent of the amount of their liability) together with fifteen dollars costs, was made, and a copy of this order was served on defendants. The amount remaining unpaid, this action was instituted to recover $3245.

The demurrer specifies various grounds. One of these is that the cause of action is barred by the provisions of section 359 of the Code of Civil Procedure. Whatever may be the merit of other specifications, we think the demurrer was rightly sustained on this ground. The second amended complaint was filed on February 13, 1912. The record does not show the date of filing of the original complaint. The appellant states, in one of its briefs, that this pleading was filed on June 22, 1911. This may, for the purposes of the present discussion, be accepted as a correct statement of the date of the commencement of the action.

Since the action was brought in this state, it is, of course, governed by the limitation statutes of California (*Glenn* v. *Saxton,* 68 Cal. 353, [8 Pac. 420] ; *Miller* v. *Lane,* 160 Cal. 90, [116 Pac. 58] ; *Platt* v. *Wilmot,* 193 U. S. 602, [48 L. Ed. 809, 24 Sup. Ct. Rep. 542]).

The obligation which the complaint seeks to enforce is the liability of shareholders under the "Bank Act" of Canada, for an amount equal to the par value of their shares, over and above the unpaid balance due on the subscription for the shares. This is a "liability created by law," and an action to enforce it is accordingly subject to the limitation declared in section 359 of the Code of Civil Procedure. It has been settled by repeated decisions of this court that the section in question is applicable to actions brought to enforce the liability of stockholders, under the constitution and statutes of California (Const., art. XII, sec. 3; Civ. Code, sec. 322) for a proportionate part of the indebtedness of the corporation. (*Hunt* v. *Ward,* 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac.

335] ; *Bank of San Luis Obispo* v. *Pacific Coast S. S. Co.,* 103
Cal. 594, [37 Pac. 499] ; *Wells* v. *Black,* 117 Cal. 157, [59
Am. St. Rep. 162, 37 L. R. A. 619, 48 Pac. 1090] ; *Santa Rosa
Nat. Bank* v. *Barnett,* 125 Cal. 410, [58 Pac. 85] ; *Jones* v.
*Goldtree Bros. Co.,* 142 Cal. 383, [77 Pac. 939] ; *Gardiner* v.
*Royer,* 167 Cal. 238, [139 Pac. 75].)     On the other hand, an
action to compel the stockholder to respond to a call for the
unpaid balance of his subscription is founded upon a con-
tract, and, unless such contract is in writing, and executed
within this state, is governed by subdivision 1 of section 332
of the Civil Code.     (*Glenn* v. *Saxton,* 68 Cal. 353, [9 Pac.
420].     See *Union Sav. Bank* v. *Leiter,* 145 Cal. 696, [79 Pac.
441].)     We can see no real distinction, so far as the question
of limitation is concerned, between the liability of a stock-
holder in a California corporation for such proportion of the
corporate debts as the amount of stock owned by him bears
to the whole subscribed capital stock, and the liability of a
shareholder in a Canadian bank for ''an amount equal to the
par value of the shares held by him'' (in addition to any
amount not paid up).     Each is a liability declared by statute,
and each is a liability differing from and superimposed upon
the contractual obligation to pay the par value of shares
subscribed for.     It is no doubt true that one who voluntarily
subscribes for or purchases shares of stock does, in a sense,
contract to become liable in accordance with the statute gov-
erning the incorporation.     But so, too, is the proportionate
liability of stockholders in California corporations on corpo-
rate contracts a contractual liability for certain purposes, as,
for example, to authorize an attachment in an action against
the stockholder.     (*Kennedy* v. *California Sav. Bank,* 97 Cal.
93, [33 Am. St. Rep. 163, 31 Pac. 846].)     The liability is,
nevertheless, one created by law, within the meaning of the
statute of limitations.     In *Platt* v. *Wilmot,* 193 U. S. 602, [48
L. Ed. 809, 24 Sup. Ct. Rep. 542], the court had under con-
sideration a New York statute (Code Civ. Proc., sec. 394)
applying a three-year limitation to ''an action against a
. . . stockholder of a moneyed corporation . . . to enforce a
liability created by the common law or by the statute.''     By
section 382 of the same code, an action upon a contract obliga-
tion or liability was barred in six years.     The action was
brought in New York against a holder of stock in a Kansas

corporation, organized under laws making stockholders individually liable for "an additional amount equal to the stock owned by each stockholder"—a provision, it will be observed, very similar to that found in the Canadian Bank Act. It was held that the action was governed by section 394. The court declared that, although the liability was of a contractual nature, in that the stockholder, in subscribing for or purchasing his stock, entered into a contract authorized by statute, yet the liability was created by statute within the meaning of section 394, "as it was by virtue of the statute that the contractual liability arose." The decision, which is directly in point, strongly reinforces the view that section 359 of our Code of Civil Procedure is applicable to the action before us. *Miller* v. *Lane,* 160 Cal. 90, [116 Pac. 58], does not conflict with this conclusion. Indeed, it is in harmony with what we have here said. The opinion in the Miller case contains one or two expressions from which the appellant seeks to argue that where the claim sued upon constitutes "corporate assets," the action is not governed by section 359. But the case did not involve this question, and it cannot be said to have decided it. Whether section 359 or some other part of the statute of limitations applies to an action against a stockholder must, under the provisions of our code, depend upon whether the liability is one "created by law," not upon whether it is "assets of the corporation."

Taking it, then, that section 359 is the statutory provision applying to the case, there arises the further question, When did the statute begin to run? It must be taken as definitely settled in this state that, under the peculiar language of section 359, an action against a stockholder on a liability created by law (e. g. the proportionate liability of stockholders of California corporations) is barred at the expiration of three years from the time when the liability was created. (*Hunt* v. *Ward,* 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335]; *Gardiner* v. *Royer,* 167 Cal. 238, [139 Pac. 75], and cases cited.) This is, of course, a marked exception to the general rule, which measures the period of limitation from the accrual of the cause of action. It seems entirely clear that, under the provisions of the Canadian statutes set forth in the complaint, the liability of stockholders to pay an amount equal to the par value of their shares was "created" at least as

early as the insolvency of the corporation,  Under the "Bank
Act," shareholders are declared subject to this liability "in
the event of the property . . . of the bank being insufficient
to pay its debts."   The Winding-up Act, after setting forth
the procedure in insolvency, declares the liability of share-
holders to contribute as provided in the charter or act of in-
corporation, and the amount which the shareholder is liable
to contribute (i. e., in this case, an amount equal to the par
value of the shares) is "deemed an asset of the company, and
a debt due to the company, payable as directed or appointed
under this act."   Other provisions of the act lay down various
methods of making calls on account of such liability.   The
language last quoted, however, indicates very clearly the in-
tent of the lawmakers to distinguish between the time when
the liability originates as an existing obligation and the time
when it becomes payable.   The liability is deemed *a debt due
to the company,* although it is not *payable* until there has
been a call pursuant to the terms of the law.   Any possible
doubt on this score is removed by the later section (46 of the
prior and 53 of the subsequent act) to the effect that the
liability to contribute, in the event of the business being
wound up, "shall create a debt accruing due from such person
at the time when his liability commenced, but payable at the
respective times when calls are made . . . "   The liability
came into being, then, or was created, before any calls were
made.   It "accrued due," in the language of the act, when
the liability commenced.   And the commencement of the lia-
bility must be taken to be the time when, under the act of
incorporation (the bank act) such liability is declared to arise,
i. e., in the event of the inability of the corporation to pay
its debts.   The bank suspended payment in October, 1906.
Under the law, it became insolvent ninety days thereafter.
The liability was created, at the latest, upon the beginning
of the *status* of insolvency, and the three year period of limita-
tion began to run then.   It may be that no action could be
brought in advance of a call, and that the action became barred
before the occurrence of the event upon which the right to
institute suit depended.   But this result, anomalous as it
seems, necessarily follows from the language of section 359,
construed as that section has uniformly been construed by this
court.

The foregoing discussion takes no account of an allegation (added to the complaint by amendment) to the effect that the amount of the debts and assets of the Ontario bank, and the sum which would have to be paid by shareholders, were not known to plaintiff until November 1, 1910, a date less than three years before the commencement of the action. The theory upon which plaintiff makes this averment is that the statute does not begin to run until the discovery by the plaintiff of the facts upon which his cause of action depends. Section 359, we think, will not bear the construction thus sought to be put upon it. The actions therein referred to ''must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created.'' The fair reading of this section makes the discovery the starting point of the period of limitation only in cases of actions to recover a penalty or forfeiture. In actions to enforce a ''liability created by law,'' the period is three years from the creation of the liability. It is true that in *Moore* v. *Boyd*, 74 Cal. 171, [15 Pac. 670], the court assumed that the discovery of the facts started the period of limitation in an action on stockholders' liability. The point was not, however, material to the decision. In later cases, the court seems to have taken it for granted that the section required an action like the one before us to be begun ''within three years after the liability was created.'' (*Hunt* v. *Ward*, 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335]; *Wells* v. *Black*, 117 Cal. 157, [59 Am. St. Rep. 162, 37 L. R. A. 619, 48 Pac. 1090]; *Gardiner* v. *Royer*, 167 Cal. 238, [139 Pac. 75].) In none of the later decisions on the subject is there any suggestion that the discovery of the facts by the plaintiff has any bearing on the question of limitation. But, even if this view be wrong, the plaintiff has not pleaded a belated discovery of the ''facts upon which the liability was created.'' The facts which it avers were not known until within three years had to do merely with the amount of the liability which it would be necessary to call. This may have affected the accrual of a cause of action, but it did not, as has been pointed out heretofore, touch the creation of the liability. The liability of the defendants as shareholders was created when the bank became insolvent. It is not alleged that the fact of insolvency was not known to plaintiff when it occurred.

Holding these views on the question of limitation, we find it unnecessary to consider any other ground specified in the demurrer.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.