and under the facts of the case and the statute quoted the Court of Common Pleas had the power to appoint the receiver.

*Judgment affirmed.*

Ross, J., concurs.

FULTON, SUPT. OF BANKS, *v.* WETZEL.

(Decided January 15, 1934.)

*Messrs. Day & Day,* for plaintiff in error.
*Mr. Merritt A. Vickery* and *Mr. W. K. Gardner,* for defendant in error.

LIEGHLEY, P. J.   Frances Wetzel was plaintiff and the Union Trust Company et al. defendants in the court below, and we shall hereafter designate said Wetzel as plaintiff, and the bank as defendant, except when Ira J. Fulton, superintendent of banks, is directly referred to.

The Union Trust Company at all times herein mentioned was, and now is, one of the largest banks in the city of Cleveland, with a capitalization of $22,500,000, and has thousands of stockholders.

Plaintiff filed a petition in the form of a so-called "class suit" on the 25th day of March, 1933, against the bank and thirty-seven of its stockholders, as defendants.   This action was instituted to enforce superadded or double liability of the stockholders of the bank.

On the 8th day of April, 1933, plaintiff filed an amended and supplemental petition against the same defendants for the same purpose.   Thereafter all, or almost all, of the defendants filed demurrers thereto, which demurrers were overruled September 23d.

The pleadings are the source of information for the statement of facts herein, and the transcript the source from which the dates of filings and rulings are obtained.

Plaintiff claims that on February 27, 1933, the bank failed and refused to pay its depositors in excess of 5 per cent. of their deposits, and was then, in fact, un-

able to pay its depositors in full; that on said date after business hours the superintendent of banks, under authority of Section 710-107a, General Code, ordered said bank not to pay more than 5 per cent. of deposits; that on March 4, 1933, said bank was closed by order of the President of the United States, and on March 13th, thereafter, ordered to remain closed until licensed to open; that up until the filing of the amended petition said bank paid only 5 per cent. of deposits; and that on the 6th day of April, 1933, said Fulton as superintendent of banks took charge of said bank with the intention of liquidating same for the benefit of creditors.

On June 24, 1933, said Fulton filed a motion for leave to be made a party defendant in said cause, which motion was granted on September 22d.

Said Fulton thereafter filed a demurrer to the amended petition alleging as a sole ground that the plaintiff did not have capacity to sue for the reason that he (the superintendent) had the sole and exclusive right to prosecute the action. This was the ground urged in the demurrers of the other defendants. The demurrer of said superintendent was overruled.

On October 9, 1933, Fulton filed a motion to dismiss the action and to strike the amended and supplemental petition from the files on the ground that he had the sole and exclusive right to prosecute same, which motion to dismiss the action was overruled on October 23d.

The defendant Fulton thereafter filed a petition in error to this court, assigning as ground of error the overruling of this motion to dismiss the action. The plaintiff filed a motion to dismiss the petition in error of the defendant Fulton on the ground that the order overruling the motion to dismiss the action was not a final order.

Counsel rendered much aid to the court by filing

very able, thorough, and exhaustive briefs. Any attempt to discuss the many questions raised and to review the many citations would extend this opinion to unnecessary and unprofitable lengths.

Two major issues are really submitted to us for decision. The other subjects discussed deal, for the most part, with reasons why in the opinion of counsel these major issues should be decided in one or the other way.

The issue is, first, whether or not the order of the court below overruling the motion to dismiss the action filed by Fulton is a final order; and, second, if it be decided that it is a final order, whether or not the superintendent has the sole and exclusive right to prosecute this action to recover superadded or double liability from the stockholders of the bank.

Dealing with the first issue, Article IV, Section 6, of the Constitution of Ohio, limits our jurisdiction to a review of "Judgments." The term "judgments" has been given a liberal interpretation by the courts of Ohio. The Supreme Court has declined to limit its scope to the definition of a judgment found in Section 11582, General Code. On the contrary, the term "judgment" has been given a broad and general meaning, which, in effect, includes, in addition, all such final orders as were formerly and are now comprehended within the provisions of Section 12258, General Code. *Chandler & Taylor Co.* v. *Southern Pacific Co.*, 104 Ohio St., 188, 135 N. E., 620.

Plaintiff relies upon the two following cases as authority for the claim that the overruling of a motion to dismiss the action is not a final order, notwithstanding the aforementioned liberal construction of the term "judgments": *Thatcher* v. *Watson*, 51 Ohio St., 561; *Home Building & Realty Co.* v. *Blasberg*, 81 Ohio St., 482, 91 N. E., 1131.

The rule announced and established by these two cases is no doubt the law of Ohio today, but it is a gen-

eral rule, not controlling in every situation, nor under the circumstances of every case.

The rule of *Thatcher* v. *Watson, supra,* announced in a memorandum opinion, follows: "Judgment reversed, for the reason that the order of the court of common pleas, overruling the motion to dismiss the appeal, is not a final order, upon which error can be prosecuted."

About this rule the Supreme Court, in the opinion of the case of *Lowellville Coal Mining Co.* v. *Zappio,* 80 Ohio St., 458, at page 468, 89 N. E., 97, 100, said: "With this as a general rule we are still satisfied."

As above stated, Fulton took charge of this bank on April 6, 1933, for the purpose of liquidating its affairs for the benefit of creditors. The original petition was filed two weeks before. The amended petition, to which the demurrers and this motion were filed, was filed two days thereafter. Fulton obtained leave to become a party defendant for the sole purpose of asserting his exclusive authority to prosecute an action to enforce and collect so-called double liability.

If such exclusive authority does not repose in him, then his presence in the case would be helpful to no one. Excepting the issue of who shall prosecute this action, Fulton is party to no issue in this suit. Fulton is party to no other issue made by the pleadings. He has no litigious interest in any other issue. A dual prosecution of this action would more likely become obstructive than serviceable to the litigation. Neither is a double or several administration or distribution of the proceeds within the contemplation of law. So that a determination of the right of the plaintiff or the right of Fulton to maintain this action finally determines this issue. An adverse decision completely ends the connection of Fulton with the case. It is our opinion and conclusion that in any case wherein the exclusive right to prosecute an action is the issue, and the only issue in which the respective parties thereto are interested, the decision of such issue is a final or-

der and furnishes a clear exception to the general rule announced in the cases cited by plaintiff.

Counsel for Fulton cite two cases which strongly support our conclusion: *Brush Electric Co.* v. *Electric Improvement Co.* (C. C. A.), 51 F., 557; *May* v. *Hardin's Executors,* 13 B. Mon. (52 Ky.), 344.

Next is the question whether or not Fulton, the superintendent of banks, has exclusive right to prosecute this action.

Repeating, the petition was filed March 25, 1933. Section 710-95, General Code, was amended, effective March 31, 1933, and by express language gave the superintendent exclusive right to maintain an action to enforce stockholders' liability, as provided in Section 710-75, General Code. Fulton took possession of the affairs of the bank April 6th, and the amended petition was filed April 8, 1933.

Section 710-75, General Code, was then amended also. Both before and after amendment, the last sentence of this section reads: "At any time after taking possession of a bank for the purpose of liquidation when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders."

By the amendment, effective March 31, 1933, of the so-called Banking Code, expressly giving the superintendent of banks exclusive authority to bring and maintain such action, it was held in the case of *Feldman* v. *Standard Trust Bank of Cleveland,* 46 Ohio App., 67, 187 N. E., 743, that thereby there was removed any doubt as to the implied exclusive authority theretofore existing. Motion to certify this case to the Supreme Court was thereafter overruled.

Counsel for Fulton urge that the *Feldman case* is decisive of this case. Plaintiff claims the holding of the *Feldman case* is erroneous in so far as it relates to any time prior to the amendment, and is not con-

trolling for the reason that the facts of the two cases differ. In the *Feldman case* the petition was filed and the superintendent took charge of the bank on the same day, but in this case the petition was filed and the proceedings were begun two weeks prior to the superintendent taking charge.

Article XIII, Section 3, of the Ohio Constitution, as amended in 1912, created the stockholders' superadded or double liability. Plaintiff claims that thereby there was vested in every creditor a right and cause of action in the event of insolvency; that she asserted this right by first bringing this action; that under the law as then in force the superintendent could not thereafter intervene and dispossess or supersede her; that having brought the action in the first instance she thereby became vested with the right to prosecute same to final conclusion.

Double liability of stockholders was thus created where otherwise none existed. The right of creditors to participate in the distribution of such potential assets of the corporation is thus established by basic law. "The liability thus created is complete and self-executing." *Snider* v. *United Banking & Trust Co.*, 124 Ohio St., 375, 178 N. E., 840.

However, Article XIII, Section 3, does not expressly provide the remedy or a remedy. True, the courts have recognized the right of a creditor to enforce double liability of stockholders of an insolvent corporation when such liability exists by law, but the source of this right does not lie in the Constitution nor exist by virtue of any constitutional provision. The fact that a creditor might by proper petition prosecute such an action was given the same weight and force in argument as if the right to do so rested upon express constitutional authority, and it was therefore insisted that all statutory provisions in respect thereto were thereby subordinated. The remedy is provided by statute. Unless and until the superintendent wrong-

fully fails or refuses to do his duty in conformity with the requirements of the statute, and as and when required, no creditor has a paramount right to prosecute and maintain such action.

While the provisions of Section 26, General Code, were not urged directly, many claims made may be grounded thereon. "When the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor," etc., is part of Section 26, General Code. This section is old. The banker act is recent. The amendment does not in so many words say the same shall apply to pending actions, but in effect forcibly says so.

Section 710-95, General Code, as amended in March, 1933, is a grant of powers, and specifies the duties of the superintendent upon taking possession of a bank. Subsection 9 thereof empowers him to enforce double liability as provided in Section 710-75, General Code, and further provides: "Until an order to declare and pay a final dividend shall be entered in the liquidation proceedings the right to enforce such liability is hereby vested exclusively in the superintendent of banks."

Subsection 10, of Section 710-95, provides: "For the purpose of executing and performing any of the powers and duties hereby conferred upon him, in his name as superintendent of banks in charge of the liquidation of such bank, to institute, prosecute and defend any and all actions or proceedings within or without this state * * *."

So that, in express words, from and after March 31, 1933, Fulton was not only vested with exclusive right to enforce such liability, but, for the purpose of executing and performing his powers and duties, to prosecute all actions and proceedings. One of his powers and duties is and was to prosecute an action to enforce double liability. The case at bar was an action or proceeding pending about two weeks, the prosecu-

tion of which, in our opinion, could be taken over and assumed by Fulton whenever he was lawfully in charge of the affairs of the bank and asserted his right to prosecute. If it be assumed that prior to the amendment the superintendent did not have the sole authority to prosecute the action, he was by this amendment thereafter given such power exclusively to the extent of taking over the prosecution of such pending actions.

This construction divests plaintiff of no substantial right and inflicts no financial injury. The right of the superintendent by statute transcends any right that plaintiff may otherwise have to assert a remedy. The action prosecuted by the superintendent at the proper time, and as provided by the act, will result in defendant's sharing in the proceeds in the same manner and to the same degree as if she continued as plaintiff.

State banks, and building and loan and kindred organizations, are creatures of the state. They are chartered to do business by the state. They all transact business of a quasi-public character. It is our belief that this state is rightfully committed to a policy of exclusive state supervision, surveillance, and, when necessary, liquidation of these institutions through the respective superintendents in the proper and wholesome conservation of the public interests.

Believing this to be the declared policy of the state, the fact that the petition was filed about two weeks before the superintendent acted herein, while in the *Feldman case* both acts occurred on the same day, presents a difference of little consequence. Also, we are dealing with the remedy only, in which plaintiff does not have an indefeasible vested right. We agree with the holding in the *Feldman case.*

Therefore, we hold that the order overruling the motion to dismiss the action is a final order, and that under the facts of this case the superintendent has the sole and exclusive right to prosecute this action to enforce stockholders' liability. The judgment is,

therefore, reversed with instructions to grant said motion and dismiss the action.

*Judgment reversed.*

McGill, J., concurs in judgment.

Levine, J., dissenting.  I am constrained to depart from the opinion of the majority of this court for the reasons hereinafter set forth.

The nature of the litigation and of the two major questions presented to us is fully set forth in the opinion of the majority.

Concerning the first issue, as to whether the order of the trial court overruling the motion of Superintendent Fulton to dismiss the action is a final order such as to permit a review at this time, I entertain grave doubt as to the finality of the order.  Bearing in mind that the case is still a pending case, and if permitted to go to a final conclusion may make the decision of this particular point entirely unnecessary, it seems subject to doubt, in view of the general practice of the Courts of Appeals, that the present order now sought to be reviewed is a final order in contemplation of law.

If the plaintiff did not prevail when the matter was heard upon the merits, and in the event of an adverse judgment against the plaintiff, this particular point now before us would hardly be necessary of adjudication.  I am, however, unwilling to enter a formal dissent as to this particular point, and to assume for the sake of argument that this order now before us is reviewable at this time.

As to the second point now before us, which goes to the merits of the action, we are called upon to say judicially whether or not the plaintiff has capacity to bring this suit.  It is emphatically contended in behalf of Superintendent Fulton that he has the exclusive right to prosecute such actions to enforce stock-

holders' double liability. Reliance is had upon Section 710-75, General Code, as amended, which reads in substance that: "When the Superintendent of the bank ascertains that the assets of such bank will be insufficient to pay its debts and liabilities, he may enforce the individual double liability of the stockholders."

Article XIII, Section 3, of the Ohio Constitution, as amended in 1912, established and created what is known as the stockholders' superadded or double liability. In the absence of legislation to the contrary, courts of chancery have recognized the right of any creditor, in the event of insolvency of a bank, to enforce such stockholders' double liability as a class suit for the benefit of all. All counsel seem to agree that the law as amended, and as it now reads, vests in the superintendent the exclusive right to enforce double liability of stockholders in a bank. It is conceded that the action of the plaintiff in this case was filed before the amendment referred to took effect. I need but refer to Section 26 of the General Code of Ohio, under the title and heading "Effect of amendment or repeal on pending actions." It reads as follows: "Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

It can hardly be disputed that at the time the plaintiff filed the action, the amendment which in effect vests exclusive power in the superintendent of banks to enforce the stockholders' double liability was not as yet in effect. When said amendment became effective, the action of the plaintiff was then a pending

action, and in view of the provisions of Section 26, General Code, said action is not affected by the amendment, because the amending act did not so express it. The law specifically provides: "It shall not affect pending actions * * * unless so expressed * * *."

I am not seeking to cast any doubt upon the wisdom of the amended law, which gives the superintendent such exclusive authority. The banking act sought to provide a comprehensive plan for the liquidation of insolvent banks, and it may effectively be argued that it can best be done by the superintendent of banks if there be not too much interference from the outside. This action, however, filed by plaintiff, was a pending action at the time the amended law went into effect. At the time the plaintiff filed the action she had an existing cause of action, and as such she had a right to enforce it because the legislation affecting her right to enforce it had not as yet been passed. The subsequent legislation, which, if it existed prior to the filing of her action, would have barred her from bringing the action, did not as yet exist, and therefore could not affect the same.

The argument that the subsequent legislation merely affected the remedy and not the right is, to my mind, untenable. The Constitution of Ohio created a right in favor of the creditors. Such proceeds as are realized from the enforcement of stockholders' double liability inured to the benefit of all the creditors. Under chancery practice, in the absence of legislation to the contrary, any one of the creditors may, in case of an insolvent bank, enforce the stockholders' double liability for the benefit of all the creditors.

When the plaintiff in this case brought her action, she did it at a time when there was nothing in the law to hinder such step. She was seeking to enforce the cause of action which then existed. The subsequent legislation does not go merely to the remedy, but affects the right of a creditor to bring an action. It is

unquestionably a pending cause of action which under the provisions of our General Code cannot be affected by subsequent amendments.

In my opinion, the trial court was correct in denying the motion of the superintendent of banks to dismiss the plaintiff's action.