Stephenson, J.
 

 Stripped to its operative facts, the petition filed in the Court of Common Pleas states
 
 *361
 
 that plaintiffs therein are the duly appointed, qualified and acting receivers of the Centerburg Building and Loan Association Company of Centerburg, Ohio; that such company was a corporation authorized to receive money on deposit and did receive money on deposit in the progress of its business, which deposits in the aggregate far exceed the assets of such company, including the collection in full of the double liability of all shareholders; that such company has been adjudged insolvent by a court of competent jurisdiction and such receivers have been authorized and directed by such court to institute legal proceedings against the stockholders of the capital stock of such company, to collect from them the full double liability assessment; that the estate of Sarah E. Debolt, deceased, was the owner and holder of twelve and one-half shares of the capital stock of such company, of the face value of $100 per share; that Ed H. Vance is the executor of the last will and testament of Sarah E. Debolt, deceased, and judgment is asked against the estate in the sum of $1,250 for the benefit of the creditors and depositors of such company.
 

 For the purposes of the demurrer, each and all these facts are admitted.
 

 It is the real contention of plaintiff in error that the laws of Ohio do not subject stockholders in a building and loan association, authorized to receive money on deposit, to what is commonly called the * ‘ double liability
 

 We are impressed that the law of this case is determined by Article XIII, Section 3, of the Constitution of Ohio, namely:
 

 “Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her; except that stockholders of corporations authorized to receive money on deposit shall be held individually
 
 *362
 
 responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * * ”
 

 Section 9648, General Code, provides in very clear terms that building and loan companies shall have power and authority to receive money on deposit.
 

 Section 710-2, General Code, provides as follows:
 

 “The term ‘bank’ shall include any person, firm, association, or corporation soliciting, receiving or accepting money, or its equivalent, on deposit as a business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a pass-book, a note, a receipt, or other writing, and unless the context otherwise requires as used in this act includes commercial banks, savings banks, trust companies and unincorporated banks; provided that nothing herein shall apply to or include money left with an agent pending investment in real estate or securities for or on account of his principal; nor to building and loan associations or title guarantee and trust companies incorporated under the laws of this state.
 

 “All banks, including the trust department of any bank, organized and existing under laws of the United States, shall be subject to inspection, examination and regulation as provided by law.”
 

 Counsel insist that Section 710-75, General Code, bears on the question herein involved. The only applicability that we can discern is the probability that the General Assembly may have had doubt as to whether Section 3, Article XIII, of the Constitution of Ohio was self-executing. Section 710-75, General Code, reads as follows:
 

 “Stockholders of banks shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such bank, to the extent of the amount of their stock
 
 *363
 
 therein, at the par value thereof, in addition to the amount invested in such shares. The stockholders in any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way recourse which such stockholders might otherwise have against those in whose names such shares are registered at the time of such failure. In determining the said period of sixty days, the period or periods when any bank is in the possession of the superintendent of banks or is operating under any restriction upon the withdrawal of deposits or the payment of liabilities shall be excluded. At any time after taking possession of a bank for the purpose of liquidation when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders.”
 

 Defendants in error insist that it was the intention of the delegates to the Constitutional Convention of 1912 to subject stockholders in building and loan associations to the so-called double liability.
 

 The proceedings of that convention, as recorded at pages 1165 to 1187 of Volume 2 of the Proceedings and Debates of that convention, prove beyond question that it was the intent of that convention that stockholders in building and loan associations authorized to receive money on deposit were included within the provisions of Section 3 of Article XIII. In fact the proposal to exempt building and loan associations was placed before the convention and was voted down.
 

 We agree with the learned Court of Appeals that that section of the Constitution is self-executing in
 
 *364
 
 sofar as it fixes the responsibility of stockholders of a corporation which is authorized to receive money on deposit, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.
 

 We cannot subscribe to the contention that it never was the intention of the people of Ohio to attach double liability to holders of stock in building and loan associations that were authorized to receive money on deposit.
 

 We do agree that it was not the original purpose or intent of the law thát building and loan associations should accept money on deposit. The original purpose of building and loan associations was to finance the acquisition of homes by loaning money to home builders, usually limited by the by-laws of the association to two-thirds of the value of the property and secured by a first mortgage on the property.
 

 If these institutions had confined their activities along this line, they would have been happier and healthier. They insisted upon engaging in the business of accepting deposits. It was but logical and natural that money deposited in a building and loan association should be surrounded with the same safeguards as were required of a bank of deposit.
 

 We are fully aware that many persons, natural and artificial, will suffer from the imposition of the double liability — but they imposed it upon themselves when they ratified the work of their delegates to the Constitutional Convention of 1912, and, while the penalty may be severe, there was much wisdom in the provision.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.