[L. A. No. 18302.   In Bank.   Oct. 2, 1942.]

STATE OF OHIO ex rel. S. H. SQUIRE, Superintendent of Banks, etc., Respondent, v. CLARENCE H. PORTER, Appellant.

Meserve, Mumper & Hughes, Roy L. Herndon and Charles O. Parker for Appellant.

Mathes & Sheppard, Gordon F. Hampton, Emrys Davis, Wm. C. Mathes, Thomas J. Herbert, Attorney General (Ohio), E. S. Lindemann, Special Counsel to Attorney General, E. J. Halambeck, Assistant Special Counsel to Attorney General, and Paul M. Gregg for Respondent.

SHENK, J.—The State of Ohio, on the relation of S. H. Squire, Superintendent of Banks in charge of liquidation of The Union Trust Company of Cleveland, commenced this action on May 26, 1936, in Los Angeles County, to enforce an alleged stockholders' liability against the defendant. In his answer the defendant raised the point that the cause of action was barred by the provisions of section 359 of the California Code of Civil Procedure. The case was tried on stipulated facts, judgment was for plaintiff, and the defendant appealed.

The Union Trust Company was a banking corporation. It was organized and existed under the corporation and banking laws of the State of Ohio. On February 27, 1933, and for some time prior thereto, the defendant was a stockholder owning 560 shares of capital stock of the company, having a par value of $25 per share. On the morning of that day, the company was unable to meet its obligations in the regular course of business. Pursuant to a resolution of its board of directors, but without statutory authority, it operated all that day on a so-called restricted basis in that it refused to pay out on demand more than 5 per cent of any demand deposit or other matured obligation. On the evening of that day, the Ohio Legislature enacted a law, effective immediately, authorizing the Superintendent of Banks to place any banking institution on a restricted basis and to segregate all deposits thereafter received. Accordingly, the superintendent made such an order applicable to The Union Trust Company. On April 8, 1933, the superintendent appointed a conservator to take possession of the business and property

of the bank. The conservator was in possession and control from that date until June 15, 1933, when the superintendent declared and determined that the company was in an unsound and unsafe condition. He thereupon took possession for the purpose of liquidation. On July 30, 1934, the superintendent, after auditing the affairs of the bank, found that the liabilities exceeded the assets in an amount greater than the stockholders' so-called superadded or double liability. On August 1, 1934, the superintendent caused notices to be mailed to the stockholders, advising them that the assets were insufficient to discharge the liabilities and that he intended to enforce the individual liability of the stockholders. He advised each stockholder of the amount (100 per cent assessment) and demanded payment on or before November 1, 1934.

It is well settled that the statute of limitations of the forum governs the time for the commencement of an action arising in another state. (*McElmoyle* v. *Cohen,* 13 Pet. 312 [10 L.Ed. 177]; *Great Western Telegraph Co.* v. *Purdy,* 162 U.S. 329 [16 S.Ct. 810, 40 L.Ed. 986]; *Royal Trust Co.* v. *MacBean,* 168 Cal. 642 [144 P. 139].)

As applied to the present controversy, section 359 of the California Code of Civil Procedure provides that an action against a stockholder to enforce a liability created by law "must be brought within three years after . . . the liability was created." The stockholder's liability for his proportionate share of the corporate indebtedness is a "liability created by law" within the meaning of this section. (*Hunt* v. *Ward,* 99 Cal. 612 [34 P. 335, 37 Am.St.Rep. 87]; *Richardson* v. *Craig,* 11 Cal.2d 131 [77 P.2d 1077].) The time when the liability was created must be differentiated from the time when the cause of action accrued. To determine when the liability was created the full faith and credit clause of the United States Constitution (art. IV, § 1) requires recourse to the applicable constitutional provisions, statutes and decisions of Ohio. (*Converse* v. *Hamilton,* 224 U.S. 234 [32 S.Ct. 415, 56 L.Ed. 749].)

The stockholders' superadded or double liability was imposed by article XIII, section 3 of the Ohio Constitution, which provided that "stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par

48

value thereof, in addition to the amount invested in such shares." The liability was direct and self-executing, did not need legislation to make it effective, and created a primary obligation against the stockholder by operation of law. (*Squire* v. *Standen,* 135 Ohio St. 1 [18 N.E.2d 608, 120 A.L.R. 952]; *State* v. *Bremer,* 130 Ohio St. 227 [198 N.E. 874]; *Snider* v. *United Banking & Trust Company,* 124 Ohio St. 375 [178 N.E. 840]; *Lang* v. *Osborn Bank,* 100 Ohio St. 51 [125 N.E. 105].) However, the Ohio Legislature saw fit to enact section 710-75 of the General Code of that state. On February 27, 1933, when The Union Trust Company suspended business, said section provided as follows:

"Stockholders of banks shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. The stockholders in any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the transferee fails to meet such liability; . . . At any time after taking possession of a bank for the purpose of liquidation, when the superintendent of banks ascertains that the assets of such bank will be insufficient to pay its debts and liabilities he may enforce the individual liability of the stockholders."

And on March 31, 1933, section 710-95 of the Ohio General Code was amended to read as follows:

"The superintendent of banks, upon taking possession of the business and property of any bank, shall have, exercise and discharge the following powers, authority and duties, without notice or approval of court, but subject to the provisions of this chapter, to wit: . . .

"9. If he ascertains that the assets of such bank will be insufficient to pay its debts and liabilities, to enforce the individual liability of each shareholder thereof as provided in section 710-75 of the General Code. Until an order to declare and pay a final dividend shall be entered in the liquidation proceedings the right to enforce such liability is hereby vested exclusively in the superintendent of banks."

The obvious effect of this amendment was to lodge in the superintendent of banks the exclusive authority to enforce

the stockholders' liability in cases where he had taken possession of a bank for the purpose of liquidation. (*Fulton* v. *Wetzel*, 47 Ohio App. 72 [190 N.E. 776]; *Feldman* v. *Standard Trust Bank*, 46 Ohio App. 67 [187 N.E. 743].) And under its provisions the superintendent could not bring an action to enforce the stockholders' liability until he had taken possession for the purpose of liquidation. (*Snider* v. *United Banking and Trust Co., supra.*) It is the law of Ohio that when the superintendent of banks sues to enforce the stockholders' liability he represents the creditors (*Feldman* v. *Standard Trust Bank, supra*), and that any statute of limitations which would bar an action by the creditor would likewise bar an action brought by the superintendent of banks to enforce the superadded liability. (*State* v. *Bremer, supra.*)

February 27, 1933, the day the bank failed to meet its obligations in the ordinary course of business and limited its payments to 5 per cent of any demand deposit or matured obligation, marked the beginning of voluntary liquidation. A cause of action was immediately created and accrued to the creditors. At that time the superintendent of banks had not taken possession for the purpose of liquidation, and his action in that respect was the all-important condition precedent to the enforcement of the stockholders' liability. (*Snider* v. *United Banking & Trust Company, supra.*) He did not take possession until June 15, 1933. During the period from February 27 to June 15, 1933, the creditors could have enforced the stockholders' liability. (*Snider* v. *United Banking & Trust Company, supra.*) Inasmuch as the right of the creditors to enforce that liability had accrued as early as February 27, 1933, the liability upon which the present action was based certainly was created at least as early as the date the cause of action accrued. When on June 15, 1933, the superintendent took possession of the bank for the purpose of liquidation, the provisions of section 710-95 giving the superintendent the exclusive right to enforce the liability became operative and automatically abated any right theretofore possessed by the creditors to enforce such liability, including actions pending when the amendment to section 710-95 became effective. (*Fulton* v. *Wetzel*, 47 Ohio App. 72 [190 N. E. 776].)

The statute giving the superintendent of banks the exclusive authority after taking possession to enforce the stockholders' liability did not substitute a new or different liabil-

ity from that already existing, that is, it did not "uncreate" an already created liability. The statute merely substituted the superintendent of banks in place of the creditors in the enforcement of the stockholders' liability. It is the settled law of Ohio that the provisions of the General Code sections in this respect were procedural and not substantive. (*Snider* v. *United Banking & Trust Company, supra; Squire* v. *Borton & Borton* (Solinski), 132 Ohio St. 180 [5 N.E.2d 479].) Furthermore, the primary, direct and self-executing stockholders' liability declared in the Ohio Constitution could not be changed by a procedural provision relating to the method of its enforcement.

Additional support is found in the decisions of Ohio for the conclusion that the stockholders' liability was created the day the bank failed, namely, on February 27, 1933. In *Squire* v. *Harris*, 135 Ohio St. 449 [21 N.E.2d 463], a transferee of bank stock was held not subject to the superadded liability where the transfer in question took place on the same day but after the bank had ceased to receive money on general deposit. Also, it has been held that the 60-day period preceding failure, prescribed in Ohio General Code, section 710-75, during which a transferor of bank stock remained liable as surety for the transferee's liability, related back from the day the bank failed, and not from the day the superintendent of banks took possession. (*Bailey* v. *State*, Court of Appeals, Ohio, Cuyahoga County, (Ohio App.) 32 N.E.2d 453.)

The plaintiff contends that the suit is on the "assessment"; that the "assessment" is a "public act" within the scope of article IV, section 1 of the federal Constitution and must be accorded full faith and credit by the courts of California; that since the Ohio law and the National Bank Act (U.S.C.A., title 12, § 21 et seq.) are similar, the decisions involving the National Bank Act to the effect that the suit is on the "assessment" are controlling; that such result is in accord with *Richardson* v. *Craig*, 11 Cal.2d 131 [77 P.2d 1077], which holds that the liability is created at the time of the assessment; and that to give a different interpretation of the Ohio law would be to violate article IV, section 2 of the United States Constitution, providing that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

The case of *State* v. *Melaragno*, 31 O.L.R. 627 (Court of Appeals for Cuyahoga County, 1930), does not support the

plaintiff's position that the present action must be deemed to be on the assessment. In that case the court was applying a statute of limitations which prescribed a period commencing from the time the cause of action accrued, as distinguished from the time the liability was created. Furthermore, the reasoning of that decision to the effect that the liability did not accrue until the assets of the bank were liquidated is contrary to the established and admitted holding of the Ohio Supreme Court that the stockholders' liability is direct, primary and self-executing. It may be noted that it is not necessary in an action by the superintendent of banks in Ohio to enforce the stockholders' liability that he even allege that he has declared an assessment.

Other cases cited by the plaintiff do not support his position. They include: *Squire* v. *Standen, supra; State* v. *Murfey, Blossom & Co.*, 131 Ohio St. 289 [2 N.E.2d 866]; *Vance* v. *Warner*, 129 Ohio St. 357 [195 N.E. 704]; *State* v. *Cruikshank*, 51 Ohio App. 61 [199 N.E. 611]; *Baumgardner* v. *State*, 48 Ohio App. 5 [192 N.E. 349]. In those cases the courts of Ohio recognized that the liability which was enforced by an assessment was the direct and primary stockholders' liability, even though the necessity therefor and the amount thereof be determined exclusively and finally by the fact and the amount of the assessment.

The plaintiff's citation of numerous authorities construing the National Bank Act and other acts similar to the Ohio statute is unavailing for the reason that we are here bound by the Ohio court's interpretation of the provisions of the Constitution and statutes of that state.

In the case of *Richardson* v. *Craig*, 11 Cal.2d 131 [77 P.2d 1077], this court held that the liability under the California Bank Stockholders' Liability Act (Deering's Gen. Laws, Act 652a) was "created" when the assessment was made. This holding could be considered only in the absence of construction by the courts of Ohio of its own fundamental and statutory laws. As we have seen, the Ohio courts have denominated the stockholders' liability direct, primary and self-executing, as distinguished from the indirect and secondary stockholders' liability involved in the California decision. Although the limitation of section 359 of the California Code of Civil Procedure is applied in the same sense in both the Richardson case and the present case, namely, from the time the liability was created, the different conclusions result from the all-important differences in substantive law creating the

rights upon which suit was brought. In the Richardson case it was recognized that if the stockholders' liability was direct and primary, as under the earlier California law, the liability would have been created at the time the obligation was incurred, and not at the time the assessment was levied.

To give proper effect to the Ohio law in this case obviously is not a violation of the privileges and immunities clause of the United States Constitution. The time limitation of said section 359 is applied uniformly to compute the applicable period of limitation for the commencement of the action from the time the liability was created.

We therefore conclude that under the law of Ohio the stockholders' liability here sought to be enforced was created on the 27th day of February, 1933, and that as the action was not brought within three years after that date it is barred by section 359 of our Code of Civil Procedure.

The judgment is reversed.

Gibson, C. J., Curtis, J., Edmonds, J., and Carter, J., concurred.

TRAYNOR, J.—I dissent. Statutes of limitation are procedural statutes that operate to bar the remedy after a reasonable time for bringing suit upon an accrued cause of action has elapsed. They are not intended to alter or destroy the substantive rights or liabilities involved. (See 34 Am. Jur. 15.) When enforcement is sought in the courts of one state of a right created under the law of another, the law of the forum governs matters of procedure, including the period of limitation imposed upon the remedy. (Restatement, Conflict of Laws, §§ 603, 604.) Invoking the general rule with respect to statutes of limitation, the majority opinion relies upon the provisions of Code of Civil Procedure, section 359, to bar suit upon a bank stockholder's liability created under the laws of the State of Ohio.

Section 359, while located in that part of the Code of Civil Procedure dealing with statutes of limitation generally, is no ordinary statute of limitations. The section requires that actions against stockholders to enforce a liability created by law be brought "within three years after . . . the liability was created." The three-year period commences to run from the date the liability is created, irrespective of when the cause of action accrues, and the action might be barred thereunder before any right to sue accrues. (*Hunt* v. *Ward*, 99

Cal. 612 [34 P. 335, 37 Am.St.Rep. 87] ; see 7 Cal.L.Rev. 346.) This statute, far from prescribing a reasonable period within which an accrued cause of action can be enforced by suit, actually delimits the liability itself. Such a statute, operating to qualify certain rights and liabilities created under the laws of this state, should not be regarded as a procedural regulation of the forum with respect to actions involving the enforcement of foreign rights and liabilities. Statutes that do not merely limit the remedy, but qualify the right, are treated as part of the substance of the obligation to be determined according to the law under which the obligation is created. (*Davis* v. *Mills*, 194 U.S. 451 [24 S.Ct. 692, 48 L.Ed. 1067] ; *Osborne* v. *Grand Trunk R. Co.*, 87 Vt. 104 [88 A. 512, Ann.Cas. 1916C, 74] ; *cf. Central Vt. Ry. Co.* v. *White*, 238 U.S. 507, 511 [35 S.Ct. 865, 59 L.Ed. 1433] ; see Restatement, Conflict of Laws, § 605, comment a; 34 Am.Jur. 16; 28 Yale L.J. 492, 494.)

Section 359 may be applied for reasons of policy to qualify rights and liabilities arising under the laws of this state. When the section was included in the Code of Civil Procedure in 1872 the Constitution of California provided that each shareholder of a corporation was individually and personally liable for his proportion of all its debts and liabilities. (Const. of 1849, art. IV, § 36.) A similar provision was incorporated in the Constitution of 1879. (Art. XII, § 3.) This liability not only worked hardship upon the individual shareholder, but obstructed the state's industrial development. (See criticism in *Richardson* v. *Craig*, 11 Cal.2d 131 [77 P.2d 1077], and in 17 Cal.L.Rev. 276.) It was inevitable that so broad a liability should come to be strictly limited. Thus, it was held to be "created" within the meaning of section 359 when the obligation was incurred so that the period of limitations could run and the creditor be barred from suing the shareholder before his right to sue had even accrued. (*Hunt* v. *Ward, supra.*) This interpretation was reaffirmed in an opinion pointing out that reliance thereon had been an important factor in the investment of millions of dollars in this state. (*Gardiner* v. *Royer*, 167 Cal. 238 [139 P.75].) The harshness of proportional liability was mitigated by this construction. When the constitutional provision imposing this liability was finally repealed in 1930 section 359 ceased to be necessary as a limiting restriction upon an unwisely broad liability, but its repeal was apparently overlooked.

Whatever the reasons of policy for the way in which sec-

tion 359 has been applied to liabilities created under local law, the application of that section to a stockholders' liability created under the laws of another state raises major issues that have been disregarded in the present case as in those that have preceded it. Without a clear perception of the distinction between local and foreign liabilities, it has been held that section 359 is applicable to the liability of bank stockholders imposed by other jurisdictions. (See *Royal Trust Co.* v. *MacBean,* 168 Cal. 642 [144 P.139] ; *Miller* v. *Lane,* 160 Cal. 90 [116 P. 58].) The interpretation of section 359 that starts the period running from the time the liability is created rather than when the cause of action accrues, together with the holdings, made for other purposes, by courts of sister states that their bank stockholder's liability is a direct and primary one created at the time the obligation is incurred, results in destroying foreign substantive rights before they are ever actually enforceable.

The Ohio courts have held that under Ohio law the stockholder's liability is created at the time the debt is incurred or the deposit is made (*State* v. *Arrowhead Investments, Inc.,* 10 Ohio Op. 119; *Poston* v. *Hull,* 75 Ohio St. 502 [80 N.E. 11] ; *Brown* v. *Hitchcock,* 36 Ohio St. 667; *Squire* v. *Abbott,* 8 Ohio Op. 134), but this interpretation does not affect the statute of limitations in that state, for the action there is not barred until six years after the cause of action accrues. (*National Bank of Lima* v. *Squire,* 3 Ohio Op. 531.) The cause of action accrues to the creditor when the bank fails to meet its obligations in the ordinary course of business (*Squire* v. *Abbott, supra; cf. Brown* v. *Hitchcock, supra; National Bank of Lima* v. *Squire, supra*) ; it accrues to the superintendent of banks when he determines that the bank is insolvent. (*National Bank of Lima* v. *Squire, supra; State* v. *Bremer,* 130 Ohio St. 227 [198 N.E. 874] ; *State* v. *Weinberger,* 44 Ohio App. 264 [185 N.E. 432] ; *Feldman* v. *Standard Trust Bank,* 46 Ohio App. 67 [187 N.E. 743] ; *Trustees of Ohio Wesleyan University* v. *State,* 50 Ohio App. 51 [197 N.E. 612, 621] ). In the present case the Ohio superintendent of banks determined that the bank's condition was unsound and took possession for the purpose of liquidation on June 15, 1933. On July 30, 1934, after auditing the books of the bank, the superintendent found that its liabilities exceeded its assets. He mailed notices to this effect to the stockholders on August 1, 1934, advising them that he intended to enforce their individual liability to the extent of a 100 per cent assessment

to be paid by November 1, 1934. Under Ohio law his cause of action did not accrue before July 30, 1934, and his right of action in Ohio was not barred until six years from that date. If, however, the deposits sued upon were made or the debts involved were incurred more than three years before he determined that the bank was insolvent, the application of section 359 would cut off the superintendent's right to sue the bank's stockholders in California before it arose and would thus operate to destroy a foreign substantive right before it was ever actually enforceable. This result is reached directly in the case of *State of Indiana* v. *Hoffman*, 53 Cal. App.2d 796 [128 P.2d 162], petition for hearing denied by this court, October 1, 1942, holding that the liability of the stockholders is created as soon as the debt is incurred. A similar determination was avoided in the present case only because the opinion finds it unnecessary under the facts to go back farther than the date of the bank's failure, more than three years before suit was filed.

California has no policy necessitating the destruction of the substantive right of the foreign bank depositor to enforce the liability imposed upon the bank's stockholders, and no interest in riding over such rights. In fact, its policy is to impose such liability, for not only does it have a bank act substantially identical with the Ohio statute, but this court has held that the liability under that act is not created until an assessment is made by the superintendent of banks. (*Richardson* v. *Craig, supra;* see, also, *Johnson* v. *Greene*, 88 F.2d 683, reaching the same conclusion regarding the National Bank Act, from which the California and Ohio statutes were copied.) It could not have held otherwise without vitiating the statutory provisions relating to assessments, for an assessment can rarely be imposed within three years of the creation of the bank's indebtedness. The majority opinion, while conceding the right to maintain actions in the courts of this state to the California superintendent of banks, denies such a right on parallel facts to the Ohio superintendent and thus vitiates the Ohio statutory provisions relating to assessments.

The opinion ignores the fact that the suits in question are brought upon a statutory assessment that would be fully recognized and enforced in the Ohio courts (*Squire* v. *Standen*, 135 Ohio St. 1 [18 N.E. 608, 120 A.L.R. 952]; *State* v. *Murfey, Blossom & Co.*, 131 Ohio St. 289 [2 N.E.2d 866];

*Vance* v. *Warner,* 129 Ohio St. 357 [195 N.E. 704]; *State* v. *Cruikshank,* 51 Ohio App. 61 [199 N.E. 611]; *Baumgardner* v. *State,* 48 Ohio App. 5 [192 N.E. 349]), and thus gives rise to an unconstitutional denial of full faith and credit to the statutes of Ohio and the assessment levied thereunder. (*Bradford Elec. L. Co.* v. *Clapper,* 286 U.S. 145 [52 S.Ct. 571, 76 L.Ed. 1026]; *Broderick* v. *Rosner,* 294 U.S. 629 [55 S.Ct. 589, 79 L.Ed. 1100, 100 A.L.R. 1133]; *John Hancock Mutual Life Ins. Co.* v. *Yates,* 299 U.S. 178 [57 S.Ct. 129, 81 L.Ed. 106]; Restatement, Conflict of Laws, § 332, p. 408; see Langmaid, *Full Faith and Credit Required for Public Acts,* (1924) 24 Ill.L.Rev. 383.) An assessment of stockholders' liability, whether made by court order or by an administrative officer pursuant to statutory authority, is a public act to be accorded full faith and credit, under the Constitution of the United States, in the courts of another state. (*Broderick* v. *Rosner, supra; Converse* v. *Hamilton,* 224 U.S. 243 [32 S.Ct. 415, 56 L.Ed. 749].) The defendant stockholder may set up personal defenses (*Chandler* v. *Peketz,* 297 U.S. 609 [56 S.Ct. 602, 80 L.Ed. 881]), but once the obligation of the stockholders is determined in an assessment proceeding, the existence and amount of the debt and the proportional liability of each are *res judicata and not subject to collateral attack* in an action brought in another state to enforce collection against a non-resident stockholder. (*Selig* v. *Hamilton,* 234 U.S. 652 [34 S.Ct. 926, 58 L.Ed. 1518]; *Marin* v. *Augedahl,* 247 U.S. 142 [38 S.Ct. 452, 62 L.Ed. 1038]; *Glenn* v. *Liggett,* 135 U.S. 533 [10 S.Ct. 867, 34 L.Ed. 262]; see Restatement, Conflict of Laws, § 186, comment c; 13 Fletcher, Cyclopedia of the Law of Private Corporations (perm. ed.), § 6522, p. 953.)

It is unconstitutional to impose as a prerequisite of suit a condition impossible to fulfill on the pretext of regulating procedure. (*Broderick* v. *Rosner, supra; Rankin* v. *Barton,* 199 U.S. 228 [26 S.Ct. 29, 50 L.Ed. 163]; *Lamb* v. *Powder River Live Stock Co.,* 132 F. 434 [65 C.C.A. 570, 67 L.R.A. 558].) In *Broderick* v. *Rosner, supra,* the New York superintendent of banks brought an action in New Jersey to recover on an assessment of the statutory liability of stockholders of an insolvent New York bank. The New Jersey courts, refusing to allow the action, relied upon the Corporation Act of New Jersey providing that no action against any stockholder of a foreign corporation to enforce the statutory liability arising under the laws of another state could be

brought in the courts of New Jersey unless it was in the nature of an equitable accounting with all stockholders and creditors as necessary parties. The Supreme Court held that New Jersey could not deny full faith and credit to the New York assessment, since the New Jersey statute, while nominally affecting the remedy only, imposed a condition impossible to fulfill as a prerequisite of an action to enforce an assessment of a sister state and therefore violated the full faith and credit clause of the United States Constitution. In concluding that the assessment was as much entitled to full faith and credit as if it had been made by court order, the opinion declared: ''The fact that the assessment here in question was made under statutory direction by an administrative officer does not preclude the application of the full faith and credit clause. If the assessment had been made in a liquidation proceeding conducted by a court, New Jersey would have been obliged to enforce it, although the stockholders sued had not been made parties to the proceedings, and, being nonresidents, could not have been personally served with process. (*Converse* v. *Hamilton,* 224 U.S. 243, 252 [32 S.Ct. 415, 56 L.Ed. 749].) The reason why in that case the full faith and credit clause was held to require Wisconsin courts to enforce the assessment made in Minnesota was not because the determination was embodied in a judgment. Against the nonresident stockholders there had been no judgment in Minnesota. Wisconsin was required to enforce the Minnesota assessment because statutes are 'public acts' within the meaning of the clause.'' The barring of actions in this state before the cause of action ever accrues is certainly as drastic as the condition imposed by the New Jersey law held invalid in the foregoing case.

Peters, J. pro tem., concurred.