Robinson, J.
 

 The amended petition of the plaintiff in error in the trial court contained two causes of action. The first cause of action was to recover from the defendant in error the sum of $62,744.56, deposited by the plaintiff in error with the First Trust
 
 &
 
 Savings Company, which it is alleged the First Trust & Savings Company wrongfully and without the authority of the plaintiff in error paid to, or for the account of, one Albert J. Koch. The second cause of action was to recover from the de
 
 *441
 
 fendant in error $34,000, which was the balance of $95;000 deposited by the plaintiff in error with the First National Bank, $61,000 of which was withdrawn by the plaintiff in error in payment of loans due the First National Bank; and it is alleged that the balance vías diverted either to the personal account of Albert J. Koch or devoted to the payment of his personal indebtedness to the bank.
 

 It is averred in the petition, and the evidence disclosed the fact to be, that the First National Bank caused the First Trust
 
 &
 
 Savings Company to be organized for the purpose of enabling it, the First National Bank, to do a trust business and certain other banking business denied to a national bank; that the stockholders of the two institutions were one and the same; that the president and first vice-president of each were the same; and that the directorate of the two were largely the same.
 

 The evidence disclosed that the identity of ownership of stock was not a coincident, but was a requirement or condition precedent to ownership of stock of either, and that -such ownership was required at the fixed proportion of one-half share of the First Trust & Savings Company to one share of the First National Bank; that the certificate of stock of the First Trust
 
 &
 
 Savings Company was indorsed on the certificate of stock of the First National Bank, and the stock was so tied together as to make it inseparable for transfer or any other purpose.
 

 It is also alleged in the petition, and the evidence disclosed, that the plaintiff in error, prior to the happening of the events here relied upon to sustain these two causes of action, filed with the First Na
 
 *442
 
 tional Bank section 4 of article 5 of its code of regulations, duly adopted by its stockholders:
 

 “The treasurer shall receive and have charge of all money, bills, notes, bonds, and similar property belonging to the company, and shall do with the same as may be ordered by the board of directors. He shall keep such financial accounts as may be required, and at the expiration of his term of office shall turn over to his successor or to the board of directors all property, books, papers and money of the company in his hands.”
 

 Also section 5 of its code of by-laws:
 

 “All monies of this company shall be deposited by the treasurer, as the same are received by him, in The First National Bank of Cleveland, Ohio, in the name of this company, and shall be withdrawn only by check signed by the treasurer and countersigned by the president.”
 

 And it is alleged that Albert J. Koch was treasurer of the plaintiff-in error; that, pursuant to the regulations and by-laws of the plaintiff in error, he opened an account with the First National Bank.
 

 The evidence further discloses that no service of a copy of the regulations and by-laws of the plaintiff in error was made upon the First Trust & Savings Company, as such; that the First Trust & Savings, Company and the First National Bank, during a considerable portion of the duration of their joint existence, were housed in the same building, with open communicating doors between the two during business hours; that Koch deposited the sums herein before mentioned with the savings company in the name of the plaintiff in error, and withdrew the same upon withdrawal slips signed by
 
 *443
 
 himself, but not signed by the president of the company; that he withdrew from the commercial account of the First National Bank the sum herein before indicated by checks signed by himself as treasurer and countersigned by the president of the company, payable to the bank in sums in excess of amounts due the bank; that the bank, out of such checks, paid itself the sums due it, and either paid the balance to Koch or credited it, according to his verbal direction, 'either upon debts of Koch to the bank or upon his persónal account; and that the defendant in error, the Union Trust Company, absorbed the First National Bank and the First Trust
 
 &
 
 Savings Company, and assumed all their obligations.
 

 An issue was made as to the indebtedness of the plaintiff in error to Koch, and also as to the knowledge of the plaintiff in error that Koch was depositing these funds in the First Trust & Savings Company and disbursing them therefrom upon withdrawal slips signed by himself alone.
 

 The jury returned a verdict for the plaintiff in the sum of $72,950.39. Motion for new trial was overruled, and judgment entered upon the verdict. The evidence upon the subjects of the indebtedness of the plaintiff to Koch and of the knowledge of the plaintiff in error that Koch was depositing funds in the First Trust & Savings Company, and disbursing them upon withdrawal slips signed by himself alone, was in conflict. The Court of Appeals did not find an absence of evidence upon either subject, or that the verdict was against the weight of the evidence, but did reverse “for the error of the court in refusing to direct a verdict on the first cause of action, and for the error of the court in its charge as to the
 
 *444
 
 second cause of action, and for the error of the court in overruling the motion for new trial.” It then proceeded to render final judgment against the plaintiff in error as to the first cause of action, and remanded the case for retrial upon the second cause of action.
 

 From its written opinion and the briefs and arguments of counsel, we understand the grounds of the Court of Appeals for requiring a directed verdict as to the first cause of action to have been that the plaintiff did not prove that it had served upon the First Trust
 
 &
 
 Savings Company a copy of its resolution requiring its treasurer to deposit its funds with the First National Bank, did not prove that the First Trust & Savings Company had knowledge of the adoption or existence of such a resolution, and failed to prove a custom in the city of Cleveland among savings and trust companies to require a copy of such resolution' before accepting money from a corporation or disbursing same.
 

 The pertinence of the reasons assigned by the Court of Appeals for its judgment depends upon the legal effect,of the organization by the First National Bank of the First Trust
 
 &
 
 Savings Company out of all its own stockholders in a fixed proportion, the tying of the stock of the two corporations together and making it inseparable, the joining of the place of business of each, and the advertising of the two companies as affiliated companies offering every banking service and having combined resources.
 

 The filing of the copy of the resolution with the First National Bank was notice to such bank of the limited authority of the treasurer of plaintiff, and, as such, was binding upon the First National Bank-
 
 *445
 
 and all of its component parts. It therefore was at least constructive notice to the stockholders of such bank. When, therefore, such stockholders, for the purpose of extending their banking business, found it advantageous, because of the inhibition of -a federal statute, to organize themselves'into an additional corporation and assume an additional name, without in any way changing their relationship to each other or to the banking enterprise in which they were engaged, they did not thereby divorce themselves from any knowledge which had been imputed to them as stockholders of the First National Bank, nor become immune to the imputation of such knowledge during the continuance of such relationship. The fact that the same association of men had assumed a new name and had secured a new charter from a different sovereign, to augment and extend the business they were already engaged in, taken in connection with the fact that they advertised to the public that they were now “offering every banking service under one roof,” that “the First Trust and Savings Company’s stock is owned by the stockholders of the First National Bank,” and advertised their “combined resources,” and joined their signatures in their advertisement, circulars and literature variously, as:
 

 “First National Bank
 

 “First Trust & Savings Company
 

 “Cleveland,”
 

 “First Trust & Savings Co.
 

 “301 Euclid Ave. 260 Superior Ave. N. E.
 

 “Affiliated with First National Bank,”
 

 - National Bank
 

 “First
 

 Trust
 
 &
 
 Savings Co.,”
 

 
 *446
 
 “The First National Bank of Cleveland and the ' First Trust
 
 &
 
 Savings Co.
 

 “John Sherwin, President,”
 

 ought not entitle that same group of men, transacting generally the same business under the two charters and the two names, to be absolved from the obligations arising out of the knowledge imputed to them under either charter or either name. Their actual relationship to the business and to each other was not changed by the separation of the business into the two entities, and was not different from that it would have been had they, the same group of men, undertaken to organize, operate, and own the First Trust & Savings Company by making the First National Bank, as such, owner of all the stock of the First Trust & Savings Company; the actual group of men owning and operating the business, divorced from the fiction of corporate entity, being in either event the same.
 

 The organization by the First National Bank of its stockholders into the separate corporate entity of the First Trust & Savings Company, for the purpose of enabling the stockholders of the First National Bank to engage in the savings and trust business, was so accomplished as to enable the same group of men to practice a mode of banking forbidden a national bank by federal statute, and to perhaps secure an additional line of banking business, and at the same time bestow upon the new entity the favorable standing and credit of the old entity by emphasizing the unity of the two. Having thus enjoyed the advantages and benefits of the identity of stockholders and unity of ownership, they ought not to be heard to assert the corporate fiction of
 
 *447
 
 their separate entity to the disadvantage of a customer whom they had thus invited to disregard the fiction. This court has declared, in
 
 State, ex rel.,
 
 v.
 
 Standard Oil Co.,
 
 49 Ohio St., 137, 30 N. E., 279, 15 L. R. A., 145, 34 Am. St. Rep., 541:
 

 “That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose pot within its reason and policy, may be disregarded.”
 

 The same principle is declared in Fletcher’s Cyclopedia Corporations, Section 42:
 

 “There is * * * substantial agreement that at certain times the fiction, of corporate entity is inapplicable. * * * The doctrine of separate existence may be carried too far, and it is properly disregarded in cases of fraud, circumvention of contract or statute, public wrong, monopoly, and like instances.”
 

 We are of opinion that the uncontroverted facts entitled the plaintiff to an instruction to the jury that it disregard the fiction of separate entity; that the copy of the by-laws and regulations of the plaintiff, filed with the First National. Bank, became a governing part of the implied contract between the plaintiff and the First National Bank, and that the First National Bank, by its acquisition of an additional charter and the assumption of an additional name, did not absolve itself from any duty toward the plaintiff arising out of the filing with it of the rules and regulations of the plaintiff.
 

 Having reached this conclusion, the question' of
 
 *448
 
 the charge of the trial court upon the subject of custom, the question of the evidence upon that subject, and the question of sustaining a motion for a directed verdict upon the first cause of action cease to be significant in this case. If a case for the jury was made upon the second cause of action, necessarily a case for the jury was made upon the first cause of action.
 

 The journal entry of the Court of Appeals declares a reversal “for the error of the court
 
 *
 
 * * m its charge as to the second cause of action,” and does not specify the respect in which the trial court erred. In its opinion, however, the Court of Appeals expressed itself thus:
 

 “Evidence was introduced tending to show that when Koch presented checks of the Damascus Company to The First National Bank, payable to the bank, he would direct large amounts to be credited to his individual account or applied in payment of his own indebtedness to the bank. These checks being drawn payable to the bank in which the funds were deposited, it can not be said that no duty rested on the bank in regard to the disposition of the amounts called for by the checks. Certainly the bank did not guarantee the proper application of the funds represented by these checks, but it did owe the duty of exercising ordinary care to protect the interests of its depositor.
 

 “It is contended by counsel for The Union Trust Company that checks drawn in this form and presented by Koch were in effect orders to pay to whomsoever Koch should direct. On the other hand, it is contended by counsel for the Damascus Company that the bank had knowledge or notice that
 
 *449
 
 Koch was wrongfully applying corporate funds in the hank on his own individual indebtedness to the bank, and that the duty rested upon the bank to notify the Damascus Company before such transfers were made. The question should have been submitted to the jury to determine whether, under the circumstances disclosed in the record, the bank did or did not use ordinary care in failing to inquire of the Damascus Company and in making the disbursements in the manner in which they were made.”
 

 The language just quoted would seem to indicate that the court was of opinion that a different rule applies to checks made payable to the order of the bank of depository from the rule applicable generally to checks made payable to the order of any other definite person or entity. We know of no such distinction.
 

 The relationship between the plaintiff in error and the bank was that of creditor and debtor, and did not give rise to the relationship of principal and agent. The bank, singly, or in its dual capacity, did not become the fiscal agent or disbursing agency of the Damascus Manufacturing Company: The matter of the indebtedness of the plaintiff in error toN Koch, if any, is significant in this case, if significant at all, which we query, for the sole purpose, of determining whether the plaintiff in error sustained a loss, and the extent thereof, by reason of the derelictions of either the First National Bank or the First Trust
 
 &
 
 Savings Company, or both. The authorization of the plaintiff in error to the First National Bank was to disburse money upon the signature of the president and treasurer of the plain
 
 *450
 
 tiff in error. The implied contract between plaintiff in error and the First National Bank was that it would only so disburse. The checks upon the bank, signed by the president and treasurer of the plaintiff in error, to pay to the order of the bank definite sums, were authority to the bank to pay to itself such sums, and were not authority to the bank to pay such sums to any one else, and therefore, with respect to the amount in which the sums of such checks exceeded the obligations of the plaintiff in error to the bank, the bank still occupied the position of debtor to the plaintiff in error, and its duties with reference to such excess were the duties imposed by its implied contract with the plaintiff in error to pay only upon the order of the president and treasurer.
 

 The loss to the plaintiff in error was predicated upon a violation of the implied contract between the plaintiff in error and the bank and of the expressed provisions of the rules and regulations of the plaintiff in error, by reason of the filing of á copy thereof with the First National Bank; and the acceptance thereafter of the deposits of plaintiff in error by the First National Bank became a part of such implied contract. The payment to Koch of the sum of the checks in excess of the indebtedness to the bank did not involve the question of negligence or ordinary care. The Court of Appeals reversed because the trial court did not submit to the jury the question “whether, under the circumstances disclosed in the record, the bank did or did not use ordinary care.” The trial court charged:
 

 “Under the law of this state, in the absence of an express contract to the contrary, a bank does , not
 
 *451
 
 guarantee or insure depositors that it will not under any circumstances whatever pay out money on deposit to persons not entitled to receive it, but the bank does guarantee that it will use due diligence and reasonable care in paying out money to the depositors entitled to receive it, or some one authorized and directed by the depositor to withdraw it, and if the bank fails to use reasonable care and due diligence in paying out deposits, it then becomes liable to the depositor for all sums of money so paid out, which the depositor did not actually receive, or derive the benefits therefrom.”
 

 The trial court further charged: '
 

 “It is contended on the part of the plaintiff that some of the checks charged to its account were made payable to The First National Bank itself and that The First National Bank after applying so much of the money called for by the checks as was necessary to pay off the indebtedness of the plaintiff company to the bank, without the knowledge or consent of the plaintiff, credited the balance of the money called for by the check to the payment of the individual indebtedness of Albert J. Koch and crediting some of it to his individual commercial account.
 

 “With reference to this contention I say to you as a matter of law; that if you find that some of the checks were drawn payable to The First National Bank itself for a sum of money greater than was necessary to pay off the loans of the plaintiff company, then before the bank could apply the balance of the money called for by the cheek to the individual account of Albert J. Koch, that it was the duty of the bank to use reasonable diligence and prudence to ascertain from the plaintiff how the balance, of
 
 *452
 
 the money should be applied, and if the bank failed to make this inquiry, and the money was wrongfully applied to the individual account of Albert J. Koch, then I say to you that the defendant company would be liable to the plaintiff to the extent of the amount of money so misapplied and diverted. Of course, if the check was not payable to the bank itself, and there was nothing on the face of the check to disclose that the company’s funds were to be diverted, then, of course, I say, the defendant company would not be liable.”
 

 We find no error prejudicial to the defendant in error in the charge of the court upon the duty of the bank to this plaintiff in error.
 

 The cross-petition in error of the defendant in error was filed more than 70 days after the rendition of judgment by the Court of Appeals, and, upon the authority of
 
 Mannix, Assignee,
 
 v.
 
 Purcell et al.,
 
 46 Ohio St., 102, 19 N. E., 572, 2 L. R. A., 753, 15 Am. St. Rep., 562, and
 
 King
 
 v.
 
 Real Estate Co.,
 
 116 Ohio St., 185, 155 N. E., 797, will be dismissed. However, the grounds of reversal there urged by the defendant in error have been considered for the purpose of determining whether the Court of Appeals reached a correct conclusion, but for a wrong reason.
 

 The judgment of the Court of Appeals will be reversed, and the judgment of the court of common pleas will be affirmed.
 

 Judgment reversed and judgment of the court of common ¡pleas affirmed.
 

 Day, Allen, Kinkade and Matthias, JJ., concur.