Stephenson, J.
 

 The Superintendent of Banks will be referred to herein as plaintiff, and Murfey, Blossom & Company as defendant.
 

 There are but two questions in this case, viz.:
 

 1. In an action by the Superintendent of Banks to collect the double liability of the stockholders of an insolvent Ohio bank, may a party who appears as a stockholder of record at the time the bank was closed avoid his double liability by showing that he had sold his shares more than sixty days before the bank was closed?
 

 2. On the trial of such action, is such record stockholder entitled to a trial by jury?
 

 There are, of course, some subsidiary questions raised in this case, but a determination of the two main questions will determine the case. We will consider these questions in their order.
 

 When the delegates to the Constitutional Convention of 1912 amended Section 3 of Article XIII of the Constitution, they had in mind just one class of individuals, namely, creditors of institutions authorized by law to receive money on deposit, usually denominated banks.
 

 While this section of the Constitution was self-executing, the General Assembly, out of an abundance of caution, enacted Section 710-75, General Code, ap
 
 *296
 
 plying such provision of the Constitution specifically to banking institutions, and further provided:
 

 ‘ ‘ The stockholders in any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way recourse which such stockholders might otherwise have against those in whose names such shares are registered at the time of such failure.”
 

 Many laws have been passed by the General Assembly relative to banks.
 

 Section 710-6, General Code, prior to the commencement of this suit, provided for the appointment of a superintendent of banks and further provided that “the superintendent of banks shall execute the laws in relation to banks.”
 

 He is likewise authorized by the latter part of Section 710-75, General Code, to enforce the individual liability of stockholders as provided for therein. That the Superintendent of Banks is the
 
 alter ego
 
 of the defunct bank that he is proceeding to liquidate and that the bank’s knowledge is his knowledge, is a misconception. He takes the bank as he finds it. He is the direct representative of the creditors of the bank, and whatever is done by him in the way of liquidating the bank is done for the benefit of its creditors primarily. Banks ordinarily can take care of themselves, but the state has seen fit to take care of their creditors.
 

 Of course banks have rights which the superintendent must respect.
 

 The individual stockholder in a defunct bank is entitled to some attention from the superintendent, and he usually gets it in the way of a notice to take care pf his super-added liability. Whether the super-added
 
 *297
 
 liability sounds in contract, or whether it is a distinct, independent, statutory liability with which mutuality has nothing to do, matters little. It is fixed, and the only defense the stockholder who is proceeded against can have to an action to enforce the super-added liability is the defense that he was not a stockholder at the time the super-added liability attached.
 

 Such is the defense in the instant case.
 

 Eventually we come to the naked question, namely, under the laws of Ohio can a person be a stockholder in fact, but not in law, when the bank is taken over for liquidation by state instrumentality?
 

 The defendant company admits it was a stockholder in fact when the bank was taken over for liquidation, but denies that it was a stockholder in law.
 

 Will the law permit a trapped stockholder to impeach the stock record? That is what it amounts to.
 

 The general law of personal property helps us none. Defendant accepted the shares of stock from Smith as a pledge for a debt. It had a legal right so to do. These certificates bore Smith’s power of attorney to transfer them. The certificates bore the rubber stamp of Murfey, Blossom
 
 &
 
 Company to the effect that it had no ownership or interest in the stock and that such transfer was merely for purpose of sale. The transaction that followed may be clear to brokers but it is not clear to courts. The certificates were presented to the Standard Bank and new certificates were issued to Murfey, Blossom & Company. Any reservation made by the rubber stamp passed into thin air and from that time on they had title to the shares of stock represented by the certificates.
 

 It was not necessary, for all that appears from the record, for defendant to surrender the old certificates and have new certificates issued, as the old certificates carried Smith’s executed power of attorney to Murfey, Blossom & Company to sell and transfer them. This
 
 modus opercmdi
 
 is attempted to be explained by the
 
 *298
 
 statement that it amounted to placing the certificates in
 
 “street form ”
 
 that it was done at the request of Smith, the pledgor of the stock; that the rubber stamp was for the purpose of giving notice to the transfer agent that the holder of the certificates had no title thereto but did have the power of sale and such an arrangement avoided the transfer tax.
 

 "While it may be unfounded, the suspicion lurks that the arrangement presented a better appearance, in so far as Mr. Smith was concerned. While the proceeding has the ear marks of irregularity, we see nothing fraudulent about it. Eventually defendant delivered its certificates, duly executed for purposes of sale and transfer, to the Standard Corporation, and received $12,000 in cash, which amount it credited to the account of Mr. Smith.
 

 The transfer was not made and when the Superintendent of Banks took charge, Murfey, Blossom & Company appeared on the stock record as the owner of the stock.
 

 Was Murfey, Blossom & Company on trial, under all the facts and circumstances, estopped to deny ownership of the stock in question when it appeared as such on the stock record? This question must be determined in the light of the law of today, not the law'of yesterday. Lawyers .and judges may entertain their individual ideas as to what the law should be in a case of this character. Such ideas must be banished and the question, what is the law, must be answered.
 

 “Estoppel is only a rule of evidence; you cannot found an action upon estoppel.”
 
 Low
 
 v.
 
 Bouverie
 
 (1891), 3 Ch., 82, 105.
 

 Lord Coke said: “It is called an
 
 estoppel
 
 or conclusion, because a man’s own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth.” 10 Ruling Case Law, 675.
 

 Thus it will be seen that the rule of estoppel is as old as the common law.
 

 
 *299
 
 There are six recognized classes of estoppel. If there is an estoppel in this case, it must be an estoppel
 
 in pais
 
 or equitable estoppel.
 

 “The terms estoppel
 
 in pais
 
 and equitable estoppel are now generally used interchangeably, however, as applicable to all estoppels which are not those by record or by deed. ’ ’ 10 Ruling Case Law, 688.
 

 The Superintendent of Banks insists that it was the duty of Murfey, Blossom
 
 &
 
 Company to follow up its delivery of the stock certificates to the transferee and see that the proper transfer was made on the stock record, but as it did not do so it is estopped to deny title to the stock. The Superintendent of Banks does not plead estoppel, but claims it arises out of the evidence and should be applied as a matter of equity. Whether as a matter of law or equity, we are unable to see wherein Murfey, Blossom
 
 &
 
 Company was estopped, in the face of the Uniform Stock Transfer Act.
 

 Murfey, Blossom & Company claims that when it delivered the certificates, fully executed to the transferee, it had performed its full legal duty, and the fact that the stock appeared in its name on the stock record when the Superintendent of Banks took the bank over for liquidation is not its fault.
 

 So far as the record discloses, the stock still remains in the name of Murfey, Blossom & Company on the stock record.
 

 We are impressed with the rule set forth in Volume 6, Fletcher Cyclopedia on Corporations, at pages 7274 and 7275, in so far as it goes, viz.:
 

 “Pledgees. In the absence of statutory provision to the contrary, a person who appears on the books of a corporation as a stockholder is liable as such to creditors, although the stock may have been transferred to him merely as collateral security. This is true of a person who appears on the books of a national bank as a stockholder. And it is true,
 
 although the debt for
 
 
 *300
 

 which the stock was pledged has been paid,
 
 if there has been no retransfer on the books of the corporation. ‘For this rule, several reasons are given. One is, that he [the pledgee] is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the stock, and his denial of ownership is inconsistent with the representations he has made; another is, that by taking the legal title he has released the former owner; and a third is, that after having taken the apparent ownership and thus become entitled to receive dividends, vote at elections, and enjoy all the privileges of ownership, it would be inequitable to allow him to refuse the responsibilities of a stockholder.’ ” (Italics ours.)
 

 Let it be noted that this is the rule in the absence of statutory provision.
 

 Cases from the federal courts and the courts of last resort of Alabama, California, Colorado, Connecticut, Georgia, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, Missouri, New York, North Dakota, Pennsylvania and "Wisconsin are cited to support this text. At page 7275 the author says :
 

 “A person to whom a certificate of stock has been transferred as collateral security is not liable as a stockholder
 
 if the stock has not been transferred to him at all on the books of the corporation,
 
 or if it has been transferred to him in terms,
 
 not as absolute owner, but as pledgee merely.
 
 ‘It has never, to our knowledge,’ said Chief Justice Waite in the Supreme Court of the United States, ‘been held that a mere pledgee of stock is chargeable where he is not registered as owner.’ Nor can the pledgee of national bank stock be held liable if the stock is not registered in his name although the registered stockholder is an irresponsible person of his choice.” (Italics ours.)
 

 From this text we cannot escape the conclusion that one who causes himself to be registered on corporate books as the absolute owner of shares of stock, cannot
 
 *301
 
 secure exemption from liability, although in fact as between himself and others he was actually only the pledgee of the stock, in the absence of statute to that effect. The law of Ohio as announced in 10 Ohio Jurisprudence, 608, Section 450, is in tune with the rule announced in Fletcher on Corporations, viz.:
 

 “As a general rule, independent of statutory provisions, the super-added liability attaches to the holder of the legal title only; only in exceptional cases will the court look beyond the registered stockholder, and this regardless of when he became stockholder. This rule is said to be based upon estoppel; the law presumed that creditors dealt with the corporation upon the faith of the individual responsibility of the stockholders who appeared as the legal owners of the stock. If one selling stock desired to relieve himself from the assessment for the payment of debts thereafter incurred, it was his duty to see that such transfer appeared on the books of the company. The mere fact that new certificates issued to purchasers of stock show from whom the stock was received, does not relieve the old stockholder from his super-added liability, if nothing appears on the stubs of the original certificate, issued to him, showing that the stock has been transferred or sold.”
 

 To support the contention that it was the duty of Murfey, Blossom & Company to see to it that proper transfer of the certificates in question was made on the stock record, the following cases are cited:
 
 Henkle
 
 v.
 
 Salem Mfg. Co.,
 
 39 Ohio St., 547;
 
 Harpold
 
 v.
 
 Stobart,
 
 46 Ohio St., 397, 21 N. E., 637, 15 Am. St. Rep., 618;
 
 Barrick
 
 v.
 
 Gifford,
 
 47 Ohio St., 180, 24 N. E., 259, 21 Am. St. Rep., 798; and
 
 Herrick
 
 v.
 
 Wardwell,
 
 58 Ohio St., 294, 50 N. E., 903.
 

 These cases do support such contention, but the trouble is that the opinions rendered therein were under an entirely different statutory set-up.
 

 It should here be added that the opinions in these
 
 *302
 
 cases and some additional cases: furnish the material for the text announced in 10 Ohio Jurisprudence, 608,
 
 supra.
 

 This was all good law when announced, but is it the law now? It is a matter of common knowledge that after the Civil War there was a great deal of what was then called “wild-catting.” The spurious corporation was at that time the medium by means of which the individual was separated from his money. Ohio had its share of these spurious corporations, and in order to safeguard its people the General Assembly tacked the super-added liability on to corporations generally. This was not a continuous phase of the law, but it continued at intervals between the Constitutions of 1851 and 1912.
 

 At the time of the pronouncement of the law in the cases hereinbefore referred to, the assignee of corporate stock upon presentation of his certificate, properly signed, to the secretary or recording officer of the bank, was entitled to have the stock transferred on the books of the bank to his name. Section 3254, Revised Statutes.
 

 By Section 3259, Revised Statutes, it was provided in substance that the term “stockholders” shall not only apply to such persons as appear by the books of the corporation to be such, but to any equitable owner of stock, although the stock appears on the books in ■the name of another. If this law obtained today, the disposition of the instant case would be much less difficult.
 

 Murfey, Blossom & Company insists that it followed literally the provisions of the Uniform Stock Transfer Act as enacted in 1911 (102 Ohio Laws, 500), wherein it is provided as follows by Section 8673-1, General Code: “Title to a certificate and to the shares rep-re-' sented thereby can be transferred only,
 

 “ (a) By delivery of the certificate indorsed either in blank or to a specified person by the person appear
 
 *303
 
 ing by tbe certificate to b% the owner of the shares represented thereby, or
 

 “(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby signed by the person appearing by the certificate to be the owners of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.
 

 “The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.”
 

 If this law, the Uniform Stock Transfer Act, is applicable to the instant case, then Murfey, Blossom & Company complied with it, and title to the stock passed when it delivered its stock certificates properly endorsed to the Standard Corporation.
 

 It will be borne in mind that this act was in full force and effect when the delegates to the Constitutional Convention of 1912 wrote the super-added liability into our organic law. This cannot be refuted, but it is claimed that because under Section 8673-3, General Code, it is the record holder who receives dividends and votes stock and who is called upon for unpaid assessments, it should be concluded that the provisions regarding the passing of title have no application except as between vendor and purchaser of corporate stock.
 

 We cannot subscribe to this contention, as it would have been an easy task for the General Assembly to have excepted therefrom the stockholder’s super-added liability.
 

 
 *304
 
 The Uniform Stock Transfer Act has gone far in an effort to simplify the transfer of corporate stock and fix the status of stockholders.
 

 Section 8673-21, General Code, defines “owner” as follows: “The person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses the certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof until and unless he also indorses the certificate to another specified person. Subsequent special indorsements may be made with like effect.”
 

 Section 8673-20, General Code, provides as follows: “A certificate is indorsed when an assignment or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby is written on the certificate and signed by the person appearing by the certificate to be the owner of the shares represented théreby, or when the signature of such person is written without more upon the back of the certificate. In any of such cases a certificate is indorsed though it has not been delivered.”
 

 Section 8673-19, General Code: “This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.”
 

 Section 8673-18, General Code: “In any case not provided for by this act, the rules of law and equity, including the law merchant, * * * shall govern.”
 

 Surely these statutes obtain unless repealed. There is no express repeal. Are they repealed by implication? Repeals by implication are not favored.
 

 Section 3 of Article XIII of the Constitution of Ohio in no wise affects the Uniform Stock Transfer Act. If there is a repeal by implication it must be
 
 *305
 
 brought about by Section 710-70, General Code, which' provides as follows:
 

 “A
 
 book shall be provided and kept by every such bank, in which shall be entered the name and residence of each stockholder, the number of shares held by each, the time when each person became a stockholder; together with all transfers of stock, stating the time when made, the number of shares and by whom transferred, which book shall be subject to the inspection of the directors, officers and stockholders of the bank at all times during the usual hours of transacting business. ’ ’
 

 True it is that this section has particular application to bailies, and it was the manifest purpose of the enactment that the “book” therein provided for should reveal a true list of stockholders, their names and residences, the number of shares held by each, when acquired, together with a history of all transfers; but nowhere is it hinted that this “book” shall be accepted as conclusive proof of its contents.
 

 We find the following statement of the law in 6 Fletcher Cyclopedia Corporations, 6317, Section 3789:
 

 “Registration of a transfer of shares on the books of the corporation is not necessary to the validity of the transfer, or the substitution of the transferee for the transferrer as a stockholder, either as between the parties themselves, or as against the corporation or its creditors, or as against a subsequent attaching creditor of the transferrer, unless such a formality is expressly required by or under the charter of the corporation or some general law, or by a valid by-law of the corporation.”
 

 The state banking law of Ohio was practically copied from the National Bank Act of the United States and naturally the germane decisions of the federal courts are most persuasive.
 

 The case of
 
 Whitney et al., Exrs.,
 
 v.
 
 Butler, Recr.,
 
 
 *306
 
 118 U. S., 655, 7 S. Ct., 61, 30 L. Ed., 266, is closely akin to the case before ns. We quote from the syllabus:
 

 “A,
 
 an owner of shares in the capital stock of a national bank, employed a broker and auctioneer to sell them by public auction. They were bid off by B, who paid the auctioneer for them, and received from him the certificate of stock, with a power of attorney for transfer duly executed in blank. The auctioneer paid the purchase-money to A. B was employed by the president of the bank to make this purchase for a customer of the bank, who had made a deposit in the bank for the purpose, and he delivered the certificates and the power of attorney to the president, and received from the bank the money for the purchase. No formal transfer of the stock was made on the transfer-book of the bank. Shortly afterwards the bank became insolvent, and eventually went into the hands of a receiver, who made an assessment on the stockholders under the provisions of Rev. Stat. Sec. 5205, to make up the deficiency in the capital. Until after the stoppage A had no knowledge as to the purchaser, or as to the neglect to formally transfer the stock, and no reason to suppose that the transfer had not been made. In an action against A, by the receiver, to recover the amount of the assessment upon his said stock,
 
 Held:
 
 That the responsibility of A ceased upon the surrender of the certificates to the bank, and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as the president knew, a transfer of the stock on the books of the bank.”
 

 Justice Harlan, in passing on the case, stated in effect, at page 662, that the conduct of A under all the circumstances was that of a careful-, prudent, business man. Such a rule must appeal to any fair minded person.
 

 The claim is made that as the delivery of the stock certificates and notice of sale was made and given to
 
 *307
 
 the Standard Corporation, it was not sufficient to charge the Standard Bank with such information as was necessary to require a transfer of the stock on the books of the bank.
 

 We cannot subscribe to this contention. The official personnel and directorate was decidedly interlocking, and it would be unconscionable to hold that the Standard Bank did not have all the knowledge relative to the stock certificates in question that the Standard Corporation had, if it were necessary to so hold.
 

 This court disposed of that question in the case of
 
 Damascus Mfg. Co.
 
 v.
 
 Union Trust Co.,
 
 119 Ohio St., 439, 164 N. E., 530, which case we would approve and follow if it became necessary.
 

 It is not necessary to advert to the testimony in support of this proposition, as it is ample, clear and conclusive.
 

 Under all the law of Ohio relative to the transfer of corporate stock, we are not impressed with the contention that because the stock in question appeared in the name of Murfey, Blossom & Company when the Superintendent of Banks took charge of the affairs of the Standard Bank, that it is estopped to deny that it is the owner thereof. The question now, as a matter of fact, is between the creditors of the bank and Murfey, Blossom & Company. Creditors did not have access to the stock book of the bank, and there is no showing that any creditor in any wise altered or changed his position by reason of the fact that Murfey, Blossom & Company appeared as a stockholder on the stock record of the bank.
 

 We have examined the following federal cases, cited in the supplemental brief:
 

 In
 
 Young
 
 v.
 
 Floria,
 
 81 F. (2 Ed.), 275, the syllabus states the case and disposes of it substantially as follows :
 

 1. A director in a national bank desired to resign. He endorsed and delivered his stock certificate to the
 
 *308
 
 president but at the officers’ request continued to act as director even after the president’s death and remained record owner of the stock until the bank closed eight months thereafter. Director was held estopped to deny ownership thereof in an action by the receiver to recover assessment.
 

 2. Generally, registered owner is liable for assessment notwithstanding transfer of stock to another unless transfer is recorded on bank’s books.
 

 3. Presumption of liability for assessment arising merely from presence of one’s name on bank stock ledger, is rebuttable by evidence that the record owner has transferred the stock, doing all that a careful and prudent business man can be required to do in order to effect transfer.
 

 4.
 
 Where record owner transferred stock, delivery of certificate to officer charged with duty of recording transfer on bank’s books is sufficient.
 

 The case of
 
 Rawlings
 
 v.
 
 Meredith,
 
 80 F. (2 Ed.), 254, helps none, as the attempted transfer came squarely within the sixty day provision of Title 12, Section 64, U. S. Code.
 

 In the case of
 
 Schechter
 
 v.
 
 Sherwin,
 
 81 F. (2d), 603, the shareholder never did anything except tender shares back to the bank, claiming he was led into their purchase by means of misrepresentations, and demand the money he had paid for them. He brought no action. The bank refused to accept the shares and pay him. When the comptroller took charge he appeared as a stockholder of record. Under such circumstances the court very properly held that he was estopped to deny liability.
 

 In the light of the federal decisions it is necessary to examine the federal statutes.
 

 Title 12, Section 62, U. S. Code, provides that the president and cashier of every national banking association shall cause to be kept at all times a full and correct list of the names and residences of all the
 
 *309
 
 shareholders in the association and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and
 
 creditors
 
 of the association and the officers authorized to assess taxes under state authority. Under this section creditors are allowed to inspect the list of shareholders, thereby giving force to the doctrine of estoppel. Under the banking laws of Ohio, a creditor has no authority to inspect the stock record, of a bank.
 

 Title 12, Section 64, U. S. Code, provides that the stockholders of every national banking association shall be held individually responsible for all contracts, debts and engagement of such association, each to the amount of his stock therein at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such association or with knowledge of such impending failure, shall be liable to the same extent as if they had had made no such transfer.
 

 Title 12, Seetioh 65, U. S. Code, provides in substance that when any national banking association shall have gone into liquidation, the individual liability of the shareholders may be enforced by any creditor of the association by bill in equity in the nature of a creditor’s bill, brought by such creditor on behalf of himself and all other creditors of the association against the shareholders thereof.
 

 If Ohio had a statute of this character, the question of a trial by jury would be eliminated. This statement is based upon the theory that if the national government can deprive the individual of his right to trial by jury in such a case, a state can do likewise.
 

 Let us not forget that we have no federal uniform stock transfer act.
 

 The fact that the directorate of the Standard Cor
 
 *310
 
 poration and the Standard Bank was interlocking is not so important in view of the fact that when Murfey, Blossom & Company delivered the stock certificates properly endorsed to the Standard Corporation, the transferee, it did all that was required of it under the Uniform Stock Transfer Act. With this view of the case it is unnecessary to determine the other question presented.
 

 The judgment of the Court of Appeals is modified and affirmed as modified.
 

 Judgment modified and affirmed.
 

 Williams, Jones, Matthias and Zimmerman, JJ., concur.
 

 Day, J., not participating.