THE STATE, EX REL. FULTON, SUPT. OF BANKS, APPELLEE,
v. ARROWHEAD INVESTMENTS, INC.; NOBIL ET AL.,
APPELLANTS.

(Decided February 28, 1940.)

*Mr. Thomas J. Herbert,* attorney general, *Mr. Ross R. Ormsby* and *Mr. Rice A. Hershey,* for appellee.
*Messrs. Harris, Sacks & Subrin,* for appellants.

STEVENS, J. The action below involved an attempt on the part of the Superintendent of Banks, under authority of Section 710-75, General Code, to collect the superadded or double liability from the defendants George B. Nobil and Charles E. Schwartz, the appellants in this court, who are alleged to be the owners of capital stock in an insolvent banking institution.

Prior to April 7, 1933, the defendant George B. Nobil was the owner of 12 shares of the capital stock of the First-Central Trust Company, of Akron, Ohio, and the defendant Charles E. Schwartz was the owner of 25 shares thereof. On April 7, 1933, the defendant Nobil was adjudicated a bankrupt in the United States District Court, Northern District of Ohio, Eastern Division. Among his assets, as scheduled, were the 12

shares of capital stock of the First-Central Trust Company.

On April 22, 1933, the defendant Charles E. Schwartz was adjudicated a bankrupt, and duly scheduled, among his assets, were the 25 shares of capital stock of the First-Central Trust Company.

Thereafter a trustee was duly appointed and qualified for each bankrupt.

On June 21, 1933, the First-Central Trust Company was taken over for liquidation by the Superintendent of Banks of Ohio.

On July 15, 1933, the Superintendent of Banks declared the necessity of collecting, from Nobil and Schwartz, the superadded liability imposed by Constitution and by statute upon stockholders in insolvent banks.

Demand having been made by the superintendent for the payment of said liability, which demand was not complied with by defendants, suit was thereafter filed by the Superintendent of Banks to recover such superadded liability.

Each of said defendants, for answer to the petition of the Superintendent of Banks, plead his adjudication in bankruptcy, and further plead that he was not a stockholder of the insolvent bank, by reason of the transfer of title to the trustee in bankruptcy.

The trial court, upon hearing, resolved the issues in favor of the Superintendent of Banks as to each of the defendants, and rendered judgment against each of them for the full amount claimed. Appeal on questions of law has been taken to this court.

The Constitution of the state of Ohio, Article XIII, Section 3, in force at that time, dealing with "personal liability of stockholders," stated the following:

"* * * stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such cor-

porations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. * * *''

Section 710-75, General Code, contains the identical wording of the foregoing constitutional section, with the following additions:

''The stockholders in any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability * * *. In determining the said period of sixty days, the period or periods when any bank is in the possession of the superintendent of banks or is operating under any restriction upon the withdrawal of deposits or the payment of liabilities shall be excluded. * * *''

It therefore appears that, under the legislation enacted pursuant to the constitutional provision, double liability depends upon the ownership of stock within 60 days prior to the failure of the bank, unless a transfer more than 60 days prior thereto was made ''with knowledge of such impending failure.''

There being nothing in this record to indicate such knowledge, or that the bank was in the possession of the Superintendent of Banks prior to June 21, 1933, or was operating under any restriction upon the withdrawal of deposits, or the payment of liabilities, the question here presented turns upon whether Nobil or Schwartz were stockholders within the 60-day period.

It being conceded that they were stockholders until their adjudications in bankruptcy, the important question is: Did such adjudications make them nonstockholders?

Section 70, paragraph a, of the Federal Bankruptcy Act, Title 11, Section 110, paragraph a, U. S. Code, in

effect at the time of the defendants' adjudications in bankruptcy, provided as follows:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except insofar as it is to property which is exempt * * *."

The foregoing section of the bankruptcy act, by operation of law vests the title to all nonexempt property of the bankrupt in the trustee as of the date of the adjudication in bankruptcy; and there is nothing here to indicate that the stock in question was exempt property.

In treating of the nature of the title thus acquired by the trustee, 6 American Jurisprudence, Bankruptcy, Section 194, states the following:

"* * * The trustee's title is extensive and complete. It vests by operation of law. The bankrupt's adjudication, in and of itself, without any assignment, operates to divest him of all title and to place it in the trustee of his creditors, as effectually as if an absolute conveyance had been made. In legal effect it amounts to the same thing. The bankrupt is, therefore, an entire stranger so far as ownership is concerned. * * *"

It is thus apparent that the title to the shares of bank stock passed from each of the bankrupts to his trustee in bankruptcy, upon the qualification of such trustee, as of the date of the adjudication of each of the respective bankrupts; nothing more than the adjudications in bankruptcy and the qualification of the trustees was necessary to accomplish these transitions of title.

We are aware of the provisions of the Uniform Stock Transfer Act (Section 8673-1 *et seq.*, General Code), providing for the manner of transfer of shares of stock in a corporation. Section 8673-18, General Code, covers cases not specifically provided for by the act, and provides as follows:

"In any case not provided for by this act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, executors, administrators and trustees, and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause, shall govern."

There being no express provision of the Uniform Stock Transfer Act governing the method of transfer of shares of corporate stock in the event of bankruptcy, under the foregoing section the provisions of the bankruptcy act govern.

Double liability for ownership of corporate stock pertained in this state under statutory provisions for a long period of time, and many cases dealing with that subject were decided by the court of last resort of this state. The conclusion to be drawn from an examination of the decisions in many of these cases is that, when one transferred stock of which he was the owner, to a person who was unable to respond to the assessment of double liability upon such stock, the transferor remained liable for the balance unpaid by the transferee, to the extent of his pro rata share of the indebtedness of the corporation incurred up to the time of the transfer.

A further rule was announced that, if one transferred shares of stock, and did not cause to be entered upon the stock book or the certificate stubs the transfer thereof to the transferee, the transferor remained liable for the assessment of double liability upon the stock.

The rule secondly indicated was vitiated by the holding of the Supreme Court of Ohio in the case of *State, ex rel. Squire, Supt. of Banks,* v. *Murfey, Blossom & Co.,* 131 Ohio St., 289, 2 N. E. (2d), 866.

In the instant case, despite the fact that the stock records of the insolvent bank indicate the two bankrupt defendants to be stockholders in the bank, that fact,

under the rule announced in *State, ex rel. Squire, Supt. of Banks,* v. *Murfey, Blossom & Co., supra,* is of no significance in the disposition of this case.

Under the provisions of Section 710-75, General Code, the solvency of the transferee of bank stock is of no consequence because the statute expressly provides that where a stockholder in any bank has transferred his shares or registered the transfer thereof *within* 60 days next before the failure of the bank to meet its obligations, or with knowledge of such impending failure, he shall be liable. It seems a perfectly logical construction of the statute to say that one who has transferred his stock more than 60 days before the insolvency and without knowledge of the impending failure of the bank, shall not be liable; and there are no express statutory exceptions to this conclusion of nonliability except the one dealing with knowledge of the impending failure of the bank. See *Squire, Supt. of Banks,* v. *Solinski,* 132 Ohio St., 180, 5 N. E. (2d), 479.

The rules of statutory construction require this court to give effect, if possible, to the entire wording of a statute. To give a construction to Section 710-75, General Code, contrary to that hereinbefore indicated, would, in our opinion, ignore entirely the provision thereof with reference to ownership "within sixty days next before the failure of such bank to meet its obligations," etc., and we are unwilling to conclude that the Legislature had any such intention when it inserted that provision in the statute.

If, as indicated, the appointment and qualification of the trustees in bankruptcy accomplished transfers of title by operation of law as of the respective dates of the adjudications of the bankrupts, then the bankrupts ceased to be stockholders of the bank as of the dates of their adjudications, if those adjudications were more than 60 days prior to the failure of the bank to meet

its obligations and without knowledge of its impending failure.

It is true that the trustees could, by abandonment of the stock in pursuance of an order of the referee in bankruptcy, have relieved the estates of the bankrupts from any possibility of the presentment of claims for payment of the double liability upon the bank stock, but in neither of the instances under consideration is it claimed, nor does the record disclose, any such abandonment or attempt to abandon on the part of the respective trustees in bankruptcy.

We are not called upon to decide whether or not a trustee in bankruptcy or the estate of a bankrupt may become liable for the payment of double liability upon stock of an insolvent bank, which stock comes into the possession of the trustee as an asset of the insolvent estate, although both of these questions may have been answered in the case of *Squire, Supt. of Banks,* v. *Standen, Gdn.,* 135 Ohio St., 1, 18 N. E. (2d), 608.

We are, however, called upon to determine whether, under the facts here disclosed, either of these defendants were stockholders within the purview of the legislation passed in pursuance of Article XIII, Section 3, of the Constitution of Ohio.

The 60-day period here involved, computed according to our statutory provision (Section 10216, General Code), shows that the period began on April 22, 1933.

The adjudication of the defendant Nobil occurred prior to said date, and the adjudication of the defendant Schwartz was made on that day; and, under the provisions of the bankruptcy act *supra* (Section 70, paragraph a), title to the shares of the defendant Nobil passed to the trustee more than 60 days next before the failure of the bank to meet its obligations, and the title of the defendant Schwartz to his shares passed to the trustee within said 60-day period.

The defendant Nobil was therefore not a stockholder

at the time the bank was taken over for liquidation by the Superintendent of Banks, nor within 60 days prior thereto. The defendant Schwartz was a stockholder within 60 days of the time the bank was taken over for liquidation by the Superintendent of Banks.

The fact that the bankrupts' petitions were filed at such times as made claims for superadded liability impossible of presentment, is, under the facts of this case, of no consequence, for one cannot be so liable unless he is a *stockholder* at such time, or under such conditions —*i. e.,* transfer with knowledge of impending failure— as to make him liable. One not a stockholder within the purview of the statutory provision cannot be assessed double liability upon bank stock if he ceased to be such stockholder more than 60 days before the insolvency of the bank and without knowledge of the impending insolvency of such bank.

We are of the opinion that the judgment of the trial court finding the defendant George B. Nobil to be liable for the payment of double liability was erroneous. That judgment is reversed; and this court, proceeding to render the judgment which the trial court should have entered, orders that the petition of the plaintiff, as against the defendant Nobil, be dismissed, at the costs of the Superintendent of Banks. The judgment against the defendant Charles E. Schwartz is affirmed.

*Judgment reversed in part and final judgment entered, and affirmed in part.*

WASHBURN, P. J., and DOYLE, J., concur.